## UNITED STATES

v.

## Gary D. MOORE and Jane M. Moore.

## No. CIV.A. 3:99CV1974 (SRU).

United States District Court,
D. Connecticut.

Aug. 23, 2001.

Christine L. Sciarrino, U.S. Attorney's Office, New Haven, CT, for plaintiff.

### *RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

UNDERHILL, District Judge.

The United States of America ("the Government"), brings this action under the Federal Debt Collections Procedures Act ("FDCPA"), 28 U.S.C. § 3301, *et seq.,* in connection with a restitution order entered in a previous criminal case against the pro se defendant Gary Moore. The Government alleges that, although his plea agreement required that he partially satisfy his criminal restitution obligation through the sale or refinancing of certain real property, Gary Moore fraudulently transferred that property to his wife, the pro se defendant Jane Moore, in violation of 28 U.S.C. § 3304. Currently pending is the Government's Motion for Summary Judgment. For the reasons set forth below, the Government's motion (doc. # 8) is granted.

### I. *BACKGROUND*

In 1998, Gary Moore pled guilty to a two-count information charging him with:

(1) embezzling and converting to his own use certain employee pension benefit plan funds in violation of 18 U.S.C. § 664; and (2) making false statements in relation to an employee pension benefit plan in violation of 18 U.S.C. § 1027. *See United States v. Moore*, 3:98cv00107 (RNC).

Gary Moore's June 1, 1998 plea agreement included a provision that he make restitution to the victims of the offense in the amount of $1,031,506.00. To that end, Gary Moore agreed to either sell or refinance his home in Wellington, Florida and to pay an amount equal to one-hundred percent equity in the house as partial satisfaction of his restitution debt. Gary and Jane Moore had purchased the Wellington, Florida property in 1992 and owned it jointly since that purchase date.

The provision of Gary Moore's plea agreement covering restitution provided, in pertinent part, that:

[Gary Moore] acknowledges that he is the present owner of real property located at 1192 Raintree Lane, Wellington, Florida .... The property located at 1192 Raintree Lane, Wellington Florida is encumbered by a first mortgage to Home Savings America of Palm Beach, Florida, with a remaining balance of approximately $47,500. There are no other encumbrances on this property ....

The defendant agrees, that within six months of the date of this agreement, he will make a restitution payment in an amount equal to one hundred percent of the equity in his Wellington, Florida.... home[]. The defendant further agrees that the funds to make this payment will be obtained by means of sale, refinancing, home equity loan or other similar means. The proceeds from said sale or refinancing shall be immediately deposited with the Clerk, United States District Court, for distribution to victims.

If the defendant fails and/or refuses to sell or refinance his home[] in accordance with the requirements described above, the Government will foreclose its judgment lien recorded on each parcel.

*See* Plea Agreement dated June 1, 1998, Attached to the Government's Statement of Undisputed Facts as Exhibit A.

The terms of the restitution provision had been the subject of negotiation between counsel for the Government and counsel for the defendant. An earlier version of the plea agreement had required Gary Moore to obtain the financing within three weeks of the date of the plea agreement. *See* Page 2 of Plea Agreement and Letter from Assistant United States Attorney Ronald S. Apter to M. Hatcher Norris dated May 7, 1998, Attached to the Government's Memorandum in Support of its Motion for Summary Judgment as Exhibit A. The Government also expressed its intent to seek an upward departure in the case. *Id.* Counsel for the defendant responded:

I wish to acknowledge receipt of your letter dated May 7, 1998 and the enclosures. I have had an opportunity to review these with Mr. Moore, and we do have some questions which we would like to resolve before scheduling the plea.

The first concern I have addresses the provision for restitution, which requires Gary to obtain financing within three weeks of the date of the agreement for the remaining amount of equity in each property. As you are aware, the property is held jointly with his wife, and I am concerned that he will not be able to obtain the contemplated financing because, without employment, he will have no demonstrable way to assure any lending institution that he will have the ability to repay such a loan. I do not know how we can best address this aspect of

restitution, but I certainly don't want Mr. Moore to sign a document which he knows contains a provision which is incapable of satisfaction.

*See* Letter from M. Hatcher Norris to Ronald S. Apter dated May 12, 1998, Attached to the Government's Memorandum in Support of its Motion for Summary Judgment as Exhibit C.

In noting that the property implicated by the restitution provisions was owned jointly by Gary and Jane Moore, counsel for the defendant also suggested that, in consideration of Mrs. Moore relinquishing her interest in that property, the Government reconsider its intention to seek an upward departure in sentencing:

When we last spoke, I addressed with you my concerns with respect to the transfer of real estate interests held in the name of Jane Moore. It is my understanding that upon completion of the proposed Plea Agreement and Plea, there will be no prosecution of Mrs. Moore. I would, in light of Mrs. Moore's transfer of her rightfully held legal interests, ask you to reconsider your previously expressed intention to seek an upward departure from the Federal Sentencing Guidelines with respect to Mr. Moore.

*See* Letter from M. Hatcher Norris to Ronald S. Apter dated May 11, 1998, Attached to the Government's Memorandum in Support of its Motion for Summary Judgment as Exhibit B.

The Government ultimately agreed to forbear from foreclosing on any lien for six months from the date of the plea agreement and the parties amended the restitution provision accordingly.

During Moore's June 9, 1998 change of plea, counsel for Gary Moore expressly represented Moore's intentions with respect to the property, in an effort to demonstrate Moore's "good faith" with regard to restitution:

Your Honor, I appreciate the opportunity to discuss with my client. He does not have any doubts.

There is just one matter I just want to place on the record, which I think is important with respect to the plea agreement.

Your Honor canvassed Mr. Moore with respect to the issues of the sales and/or refinancing of the two parcels of property. And I want to note for the record that those properties are owned jointly with his wife. I want to note that Mr. Moore, in consultation with his wife and in consultation with me, have [sic] agreed that she is going to forfeit her one-half undivided interest in that.

I wanted to put that on the record because I did not want the Court misled in any way in this document, because it does not say that. I think it's important to make the record clear, that in an effort to show his good faith to the Court with respect to the issue of restitution in this matter, that commitment has been made by him . . . .

*See* Transcript of June 9, 1998 Change of Plea in *United States v. Gary Moore,* 3:98cv107 (RNC) at 30–31, Attached to the Government's Statement of Undisputed Facts as Exhibit B.

On July 30, 1998, however, Gary Moore conveyed his interest in the Wellington, Florida property to his wife, Jane Moore, for ten dollars ($10.00), and Mrs. Moore became the sole owner of the property. *See* Government's Statement of Undisputed Facts at 2, ¶ 3 and Quitclaim Deed, Attached to the Government's Statement of Undisputed Facts as Exhibit C.

At Moore's October 9, 1998 sentencing hearing, counsel for the government reminded Gary Moore of his obligations with

respect to the Wellington, Florida property:

[P]ursuant to the terms of the Plea Agreement, he is obligated to make a second restitution payment equal to 100 percent of the equity in his Wellington, Florida home by six months from the date of the Plea Agreement, which would be on or about December 1st of this year.

See October 9, 1998 Sentencing Transcript in *United States v. Gary Moore*, 3:98cv107 (RNC) at 96, lines 3–11, Attached to Government's Statement of Undisputed Facts as Exhibit D. Counsel for Mr. Moore responded:

The only thing with respect to the Florida home, we've been unable to sell that. I just believe that the Plea Agreement—I'm not going to go into it—sets forth certain provisions with respect to that home, and if in fact it is not sold within six months, I understand there's a judgment lien in matters like that.

*Id.* at 96, lines 16–22. The Court then expressly addressed the defendant:

Mr. Moore, you heard what Mr. Apter and Mr. Norris just said. I don't think it's necessary for me to comment further at this time. I'm sure you understand what your obligations are, and if you have any questions in that regard, I'm sure Mr. Norris will continue to be available to you.

*Id.* at 97, lines 2–7. Judgment then entered in Gary Moore's criminal case, including an order that required him to pay restitution in the amount of $1,031,506.00. The court, however, was not advised that Mr. Moore had transferred his interest in the Wellington, Florida property three months earlier.

Because Mr. Moore had already conveyed his interest in the Wellington, Florida property to his wife in July 1998, making her the sole owner of the property, a judgment lien securing his restitution debt could not be placed on the property when judgment entered in October 1998. To date, the Wellington property has not been sold and Mr. Moore's restitution debt to his victims exceeds one million dollars. The Government brought suit to void the conveyance as a fraudulent transfer pursuant to 28 U.S.C. § 3301, *et seq.,* and now seeks summary judgment on its claim.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Summary judgment is proper "[o]nly when reasonable minds could not differ as to the import of the evidence." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

■ Where a pro se litigant is involved, the same standards apply. A court should, however, construe pro se pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999), *quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

## III. *DISCUSSION*

The Government contends that Gary Moore's conveyance of the Wellington, Florida property to his wife constitutes a fraudulent transfer within the meaning of the Federal Debt Collections Procedures Act ("FDCPA"), 28 U.S.C. § 3301, *et seq.*

28 U.S.C. § 3304 provides, in pertinent part:

(b) Transfers without regard to date of judgment.

(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—

(A) with actual intent to hinder, delay or defraud a creditor; or

(B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—

. . .

(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(2) In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether—

(A) the transfer or obligation was to an insider;

(B) the debtor retained possession or control of the property transferred after the transfer;

(C) the transfer or obligation was disclosed or concealed;

(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(E) the transfer was of substantially all the debtor's assets;

(F) the debtor absconded;

(G) the debtor removed or concealed assets;

(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Thus, in order to prevail on the theories of fraudulent transfer that it advances here, the Government must show either: (1) that the transfer was made "with actual intent to hinder, delay, or defraud a creditor;" or (2) that the transfer was made without receiving reasonably equivalent value in exchange and that Gary Moore intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. The Government argues that the transfer was fraudulent under either approach.

### A. *Actual Intent*

With respect to the first theory, the court is not prepared to say, as a matter of law, that Gary Moore made the transfer "with actual intent to hinder, delay, or defraud a creditor." Admittedly, several of the factors under 28 U.S.C. § 3304(b)(2) do suggest such intent. For example, the transfer from Gary Moore to his wife, Jane, was clearly one to an "insider," *see*

28 U.S.C. § 3304(b)(2)(A), which is defined by the FDCPA as including "a relative of the debtor," *see* 28 U.S.C. § 3301(5)(A)(i), which, in turn, includes "a spouse." *See* 28 U.S.C.S. § 3301[7](5) (Supp. April 2001).[1] Second, the transfer of the Wellington, Florida property was not "disclosed" and was arguably "concealed," *see* 28 U.S.C. § 3304(b)(2)(C), because, at the October 1998 sentencing hearing during which the Wellington property was expressly discussed and pursuant to which the restitution judgment entered, the Court was not advised that Gary Moore had already transferred his interest in the property in July 1998. Third, the value of the consideration—ten dollars ($10.00)—was considerably less than the value of the Wellington property at the time by any measure set forth by the parties. *See* 28 U.S.C. § 3304(b)(2)(H); *see also* Defendants' Memorandum in Opposition to the Plaintiff['s] Motion for Summary Judgment at 1–2 ("The plaintiff claims the equity value of the Wellington Florida home is $47,500. The defendants claim the equity value is less than $5,000."). Moreover, the transfer occurred shortly before Gary Moore incurred a substantial debt: the transfer occurred in July 1998—after his equity in the Wellington property had become a term of his June 1998 plea agreement, but shortly before Gary Moore was to incur the October 1998 judgment requiring him to pay restitution in the amount of $1,031,506.00. *See* 28 U.S.C. § 3304(b)(2)(J).

Although consideration of these and other factors arguably do suggest "actual intent to hinder, delay, or defraud a creditor," the pro se defendants deny that they had such intent:

---

1. The bracketed paragraph designators were apparently inserted by USCS to correct a numbering inconsistency and to maintain numeric continuity. *See* "History: Ancillary Laws and Directives; Explanatory Notes," 28 U.S.C.A. § 3301 at 157 (Supp. April 2001).

The defendants did not transfer the property ownership for fraudulent purposes. The transfer was done so that Mrs. Moore could sell the home if she were unable to meet the mortgage obligation and to facilitate the daily operation and maintenance of the property while Mr. Moore was incarcerated.

*See* Defendants' Memorandum in Opposition to the Plaintiff['s] Motion for Summary Judgment at 2–3. *See also* Statement of Undisputed Facts in Jane Moore's Report of Parties' Planning Meeting dated February 14, 2000 ("With the pending incarceration of Gary D. Moore the property was transferred to Jane M. Moore so that she could sell the property to pay the monthly mortgage payments . . . .").

In short, the court makes no finding regarding defendants' actual intent. The court is not prepared to say, as a matter of law, that Gary Moore acted "with actual intent to hinder, delay, or defraud a creditor." At the same time, the court is not prepared to say that the defendants' proffered reason for the transfer creates a genuine issue of material fact because there is considerable doubt whether the defendants' stated motivation for the transfer is legally sufficient to remove it from the reach of fraudulent conveyance. Because transfer was made absent reasonably equivalent consideration and because Gary Moore reasonably should have believed that he would incur debts beyond his ability to pay as they became due, it is unnecessary to resolve the issue of actual intent.

### B. *Reasonably Equivalent Value and Debts Beyond Ability to Pay*

As noted above, a fraudulent transfer may also be found where "the debtor makes the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation" and the

debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." *See* 28 U.S.C. § 3304(b)(1)(B)(ii).

■ The first issue is whether Gary Moore received "reasonably equivalent value" when he transferred his interest in the Wellington property to his wife, Jane Moore. The terms "value" and "reasonable equivalent value" are both defined by section 3303 of the FDCPA. That statute provides, in pertinent part:

(a) Transaction. Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but Value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

(b) Reasonable Equivalent Value. For the purposes of sections 3304 and 3307, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of such interest upon default under a mortgage, deed of trust, or security agreement.

28 U.S.C. § 3303.

It is undisputed that the transfer of the Wellington property from Gary Moore to Jane Moore was made in consideration of ten dollars ($10.00). *See* Government's Statement of Undisputed Facts at 2, ¶ 3 and Quitclaim Deed, Attached to the Government's Statement of Undisputed Facts as Exhibit C; *see also* Defendants' Statement of Disputed Facts at 2, ¶ 3 ("Undisputed Fact."). Although the defendants now claim that the total amount of equity

that existed in their Wellington, Florida home was actually less than what Gary Moore agreed to in his Plea Agreement or what was set forth in his Pre–Sentence Report, even under the defendants' calculation of the remaining equity in the property, the nominal sum of ten dollars is not reasonably equivalent value as that term is defined by section 3303. *See, e.g., Vancampen v. United States,* Nos. Civ. A. 95–1436–FGT, Civ. A. 95–1453–FGT, 1997 WL 873537 at *3–4 (D.Kan.1997) (no dispute that one dollar did not constitute reasonably equivalent value).

■ Similarly, for purposes of determining whether there was a reasonably equivalent value exchanged for the transfer, it is immaterial that defendants claim the property was transferred to Mrs. Moore so that "she could sell the home if she were unable to meet the mortgage obligation and to facilitate the daily operation and maintenance of the property while Mr. Moore was incarcerated" because those concerns do not suggest any value *to Gary Moore* in exchange for the transfer.[2]

The court therefore concludes that Gary Moore transferred his interest in the subject property without receiving reasonably equivalent value within the meaning of sections 3303 or 3304(b)(1)(B).

■ At the time of the transfer, Gary Moore "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 28 U.S.C. § 3304(b)(1)(B)(ii). The plea negotiations between counsel for the Government and counsel for Mr. Moore clearly contemplat-

ed that a restitution order would enter in excess of one million dollars. *See, e.g.,* Letters dated May 7, 11 and 12, 1998, Attached to the Government's Memorandum in Support of its Motion for Summary Judgment as Exhibits A, B, C and D. Moreover, during Mr. Moore's June 9, 1998 change of plea, Mr. Moore's counsel, in an effort to show his good faith to the Court with respect to the anticipated restitution, represented that Mr. Moore, in consultation with counsel and his wife, had agreed that Mrs. Moore would forfeit her one-half undivided interest in the Wellington property. *See* Transcript of June 9, 1998 Change of Plea in *United States v. Gary Moore,* 3:98cv107(RNC) at 30–31, Attached to the Government's Statement of Undisputed Facts as Exhibit B. The plea negotiations and the canvass conducted during the June 9, 1998 change of plea all occurred prior to Mr. Moore's transfer of the property in July. Accordingly, it is clear that, when Mr. Moore made the transfer of the Wellington property in July 1998, he knew or reasonably should have known, that he would incur the restitution debt that would require him to pay over one million dollars, an amount that was beyond his ability to pay. *See, e.g.,* Letter from M. Hatcher Norris to Ronald S. Apter dated May 12, 1998, Attached to the Government's Memorandum in Support of its Motion for Summary Judgment as Exhibit C ("As you are aware, the property is held jointly with he and his wife, and I am concerned that he will not be able to obtain the contemplated financing because, without employment, he will have no demonstrable way to assure any lending institu-

---

**2.** Any intangible, emotional benefit is not included within the meaning of reasonable equivalent value, because "[w]ithin the meaning of the statute, value means economic value." *Vancampen,* 1997 WL 873537 at *4. In any event, even if there were some other conceivable consideration, courts have been

skeptical of claims even stronger than what has been articulated here. *See id.* at *3–4 (fact that transferor had no source of income outside the revenue from subject property and expected transfer to preserve her means of support did not constitute value for the transfer).

tion that he will have the ability to repay such a loan.").

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Summary Judgment (doc. # 8) is GRANTED and the transfer from Gary Moore to Jane Moore of his interest in the Wellington, Florida property is set aside as a fraudulent transfer under 28 U.S.C. § 3304(b)(1)(B)(ii). The clerk is directed to enter judgment in favor of the United States declaring null and void the quit-claim deed dated July 30, 1998, by which Gary Moore transferred his interest in 1192 Raintree Lane, Wellington, Florida to his wife, Jane Moore. The United States shall be allowed to record a judgment lien attaching Gary Moore's one-half ownership interest in the subject property, and to foreclose on that lien, if necessary.

Jane Moore shall reimburse the government for its reasonable costs to conduct a title search of the subject property. In the event that Jane Moore has encumbered the subject property since July 30, 1998, she shall pay the government an amount equal to one-half the present outstanding value of any such encumbrances. If the amounts due from Jane Moore are not promptly paid voluntarily, the government may move to reopen this matter for entry of judgment against Jane Moore in a sum certain.

The clerk is instructed close the file.

It is so ordered.