In re: **PHILLIPS AND HORNSBY LITIGATION**

and

**The Fraudulent Transfer Action**

Nos. 03–MD–01–D–M3, 03–CV–321–D–M3.

United States District Court, M.D. Louisiana.

March 3, 2004.

Don R. Beard, Strain, Dennis, Mayhall & Bates, Baton Rouge, LA, for Plaintiffs.

Richard M. Upton, Baton Rouge, LA, Robert E. Dozier, U.S. Department of Justice, Tax Division, Washington, DC, John Joseph Gaupp, James L. Nelson, United States Attorney's Office, Middle District of Louisiana, Baton Rouge, LA, Corbett L. Ourso, Jr., Hammond, LA, David Mark Bienvenu, Jr., Robert W. Barton, Brandon Kelly Black, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, Duncan S. Kemp, III, Law Offices of Duncan Kemp, Hammond, LA, Clifton T. Speed, Greensburg, LA, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

Before this court is the United States' (USA) Motion for Summary Judgment (doc. 6). Ryan Phillips and Gregory Phillips (the Phillipses) have filed an opposition. There is no need for oral argument. This court has subject matter jurisdiction

over this fraudulent transfer action pursuant to 28 U.S.C. § 1331. For the following reasons, this court denies the USA's motion.

### Factual and Procedural Background

This action has extensive procedural history because it has involved five separate litigation components, which were initially consolidated and then later severed. This action arose out of a state court succession and concursus action filed in December 1998 by the co-executors of the Succession of Stanley E. Hornsby, seeking to place the heirs and legatees of the Hornsby estate into possession of the estate property, and to adjudicate competing claims to the inherited interests of two heirs and the legatee interest of Chaney Phillips.

Initially, the USA was named as a part to the principal action because it held recorded federal tax liens against the two heirs. In its original answer, the USA asserted its tax lien claims against the inherited interests of these heirs. Later, the USA served a Writ of Garnishment on the co-executors of the Hornsby Succession, asserting a criminal lien against the legatee interest of Chaney Phillips. This garnishment caused the co-executors to add Chaney Phillips and his sons Ryan and Gregory as parties to the concursus action. On March 16, 1999, the USA answered this amended complaint and raised a cross-claim/counterclaim/third party claim against the various parties, seeking a judgment setting aside the donation from Chaney Phillips to his sons as a fraudulent transfer, and recognizing and maintaining its statutory lien against Chaney Phillips's legatee interest. Subsequently, in August 1999, all portions of the underlying litigation were remanded to state court, except the litigation relating to the inherited interests of Chaney Phillips and the Hornsby heirs.

The basis for the USA's fraudulent transfer action arises out the Federal Debt Collection Procedures Act ("FDCPA"). The FDCPA provides the USA with several post-judgment collection remedies to enforce civil and criminal debts. In this case, the USA is asserting a debt arising out of criminal proceedings against Chaney Phillips. On April 21, 1998, Chaney Phillips was convicted in the United States District Court for the Middle District of Louisiana of various felonies related to mail fraud. On July 31, 1998, Judge Polozola sentenced Chaney Phillips to incarceration for a term of 97 months and ordered him to pay restitution in the amount of $225,587.56 to three private victims. Also on July 31, 1998, Chaney Phillips made an inter-vivos donation to his sons Ryan and Gregory of "any and all properties due me as a special legatee of the Succession of Stanley E. Hornsby."[1]

Chaney Phillips thereafter appealed his conviction. On appeal, the Fifth Circuit reversed the conviction in part and remanded to the district court for re-sentencing. On November 20, 2000, a year and a half after the USA filed its fraudulent transfer claim, Judge Polozola re-sentenced Chaney Phillips to 84 months in prison and lowered the amount of restitution by $8,000 to the amount of $217,587.56. The USA was granted leave to amend its fraudulent transfer claim to reflect the new debt imposed. The USA now seeks summary judgment, asking this court to find as a matter of law that the donation from Chaney Phillips to his sons Ryan and Gregory was a fraudulent transfer and to recognize the USA's statutory lien against Chaney Phillips's legatee interest.

### Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to in-

---

1. Mot. for Summary Judgment, Exhibit H.

terrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[2] When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.[3] When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the non-moving party may not rest upon the mere allegations or denials in the pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact.[4] Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.[5] If, once the non-moving party has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.[6]

### Analysis

The USA contends that Chaney Phillips's conveyance of his interest in the Hornsby succession to his sons constitutes a fraudulent transfer within the meaning of the Federal Debt Collections Proce-dures Act ("FDCPA"), 28 U.S.C. § 3302 *et. seq.* The FDCPA provides the United States with a host of remedies when seeking to collect a debt from a debtor who has fraudulently transferred property. The Government may obtain an "avoidance of the transfer... to the extent necessary to satisfy the debt."[7] "Debt" includes "an amount that is owing to the United States on account of... restitution...."[8] Although the restitution in this case is owed to private persons and not to the USA, the Fifth Circuit has held that the United States possesses the lawful authority to enforce private restitution orders using the FDCPA.[9] Accordingly, the USA argues that the transfer can be considered fraudulent according to any one of three separate provisions of the FDCPA: § 3304(a)(1), § 3304(b)(1)(A), or § 3304(b)(1)(B).

### I   Fraudulent Transfer Under § 3304(a)(1)

In order to prevail under § 3304(a)(1), the USA must prove (1) that the debt arose before the transfer; (2) that the transfer was made without receiving reasonably equivalent value in exchange; and (3) the debtor was insolvent at the time of the transfer or the debtor became insolvent as a result of the transfer.[10]

**2.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**4.** *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

**5.** *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996).

**6.** *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also* Fed. Rule Civ. P. 56(c).

**7.** 28 U.S.C. § 3306(a)(1).

**8.** *Id.* § 3002(3)(B).

**9.** *United States v. Chaney Phillips,* 303 F.3d 548, 550 (5th Cir.2002).

**10.** 28 U.S.C. § 3304(a) states; "**Debts arising before the transfer.** Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—(1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (B) the debtor is *insolvent at that time* or the debtor becomes insolvent as a result of the transfer or obligation;"

### A. The Existence of a Debt

▪ The Phillipses first argue that the USA has not proven the existence of "debt" for the purposes of the FDCPA. The Phillipses point out that, in its fraudulent transfer claim, the USA states that Chaney Phillips's "debt" arose from the restitution imposed by the district court's July 1998 sentencing order. The Phillipses argue that, because that judgment was vacated by the Fifth Circuit and remanded to the district court for re-sentencing, the USA has failed to plead a valid debt.[11] On February 23, 2004, this court allowed the USA to amend its claim to cure this potential pleading defect, mooting the Phillipses' argument.[12]

### B. When the Debt Occurred

▪ In a related argument, the Phillipses argue that the USA cannot prove a fraudulent transfer under § 3304(a)(1) because the debt did not arise before the transfer, as is required under that specific statutory provision. The Phillipses maintain that the original sentence was vacated and, therefore, any "debt" claimed by the USA actually occurred on November 20, 2000, the date Chaney Phillips was re-sentenced. Because this date is clearly *after* Chaney Phillips transferred his legatee interest to his sons, the Phillipses argue that the first prong of § 3304(a)(1) is not met.

Denying the USA summary judgment pursuant to § 3304(a)(1) because Chaney Phillips's original sentence was later vacated would appear to evade the purpose behind this section of the FDCPA.[13]

§ 3304 is separated into two parts entitled, "(a) Debt arising before the transfer" and "(b) Transfers without regard to date of judgment." As will be discussed below, claims brought under subsection (b) have either an intent requirement or a "reasonableness" requirement. On the other hand, claims brought under subsection (a) have no intent requirement. Rather, fraudulent intent or lack of reasonableness is supposedly presumed when the transferror's debt arose prior to the time he transferred his assets.

In this case, the July 1998 sentencing court ordered Chaney Phillips to pay restitution in the amount of $225,587.56; upon remand, that amount was reduced by only $8,000. Although, technically, the earlier imposition of restitution was vacated by the Fifth Circuit's opinion, Chaney Phillips knew a debt against him *had* been imposed. Therefore, although the sentence was vacated, the presumption of fraudulent intent was not. Accordingly, for the purposes of the FDCPA, the "debt" arose on July 31, 1998—the date the court imposed the original order of restitution.

### C. The Existence of a Transfer

▪ The Phillipses also make a more general argument that, regardless of when and whether a debt arose, there has been no transfer of assets within the meaning of the FDCPA.[14] Under the FDCPA, a "transfer" is not made until the debtor has acquired rights in the asset transferred.[15] The Phillipses argue that, because Chaney Phillips never received a judgment of pos-

**11.** Mem. in Opp. to Mot. for Summary Judgment at p. 1–3.

**12.** Doc. 20.

**13.** *See U.S. v. Phillips,* 2001 WL 34046433 at *1 (M.D.La. July 3, 2001) (stating that the FDCPA was enacted "to create procedures by which the United States could more efficiently collect its debts without relying on a patchwork of state laws"). *See also* H.R.Rep. No. 101–736 at 23–25 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6631–33.

**14.** Mem. in Opp. to Mot. for Summary Judgment at p. 6.

**15.** 28 U.S.C. § 3305(4).

session for his 5% interest in the succession, he had nothing to "transfer" to his sons.[16] Although the issue appears to be one of first impression, this court finds that such a narrow interpretation of the word "transfer" is unfounded.

The simple fact that Chaney Phillips is a party to the succession and concursus action, having been named as a residuary legatee in Stanley Hornsby's last will and testament, indicates that Mr. Phillips has some kind of "right" in the succession assets. Chaney Phillips acquired a right in the succession asset, for the purposes of transferring it, upon the death of Stanley E. Hornsby. Limiting the statute's definition of "transfer" to include only those assets in the debtor's possession at the time of the transfer would narrow the scope of the FDCPA and effectively rewrite the statute. Thus, the transfer that Chaney Phillips made to his sons was a valid transfer within the meaning of the FDCPA.

*D. When the Transfer Occurred*

■ This court must now determine whether there is an issue of material fact regarding whether the transfer of assets between Chaney Phillips and his sons occurred before or after the July 31, 1998 sentence. The certified true copy of the inter-vivos donation instrument indicates that the document was executed on July 31, 1998—the same day as Chaney Phillips's sentence. To be entitled to summary judgment under § 3304(a)(1), the USA must show that no rational jury could conclude that the transfer occurred before the debt was imposed.

The USA's first argument is that the transfer did not occur on July 31, 1998 at all—but rather on August 10, 1998, at the time the donation was recorded in the public records of St. Helena Parish.[17] For the purposes of the FDCPA, a "transfer" is made with respect to an asset that is not real property... when the transfer is so far perfected that a creditor on a simple contract cannot acquire, otherwise than under this subchapter, a judicial lien that is superior to the interest of the transferee."[18] La. Civ.Code art. 1554 requires the acts of donation and acceptance to be recorded "when the donation comprehends immovables or rights thereto." The USA argues that, because the Hornsby estate consisted of immovable assets, Louisiana law required the donation to be recorded before it could be effective against a third party, such as the contract creditor contemplated in § 3305(1)(B) of the FDCPA. To analyze the validity of this argument, the court must determine what kind of interest was transferred from Chaney Phillips to his sons and when that transfer became effective as to third-parties.

■ Karen Hornsby Kirkwood, one of the co-executors of the Hornsby succession, filed an affidavit in this case. In her affidavit, Ms. Kirkwood testified that on January 6, 1998, a state judge issued a judgment confirming a settlement regarding a legal challenge to Stanley E. Hornsby's will.[19] The judgment also called for all of the assets of the Hornsby succession to be placed in a closely-held corporation.[20] The corporation thereafter issued shares of stock in the names of the heirs and legatees in the proportion of their respec-

---

**16.** Mem. in Opp. to Mot. for Summary Judgment at p. 6.

**17.** Mem. in Supp. of Mot. for Summary Judgment at p. 23.

**18.** 28 U.S.C. § 3305(1)(B).

**19.** Mot. for Summary Judgment, Exhibit A. Stanley E. Homsby's children who were not named in the will challenged the will's validity.

**20.** *Id.,* Exhibit D.

tive ownership interests in the succession assets.[21]

It follows from this testimony that the interest Chaney Phillips transferred to his sons on July 31, 1998 was an interest in the closely-held corporation which managed the succession. Under Louisiana law, "interests or shares in a juridical person that owns immovables are considered as movables as long as the entity exists."[22] Therefore, despite the fact that the corporation managing the succession happened to own immovable property, the transfer of the 5% interest did not have to be recorded in the parish records in order to be effective against a third-party creditor. As such, the "transfer" was "so far perfected that a creditor on a simple contract [could not] acquire it" upon the execution of the donation instrument on July 31, 1998.

Finally, the USA argues in the alternative that, even if the transfer occurred on July 31, 1998, the transfer occurred after the debt was imposed. The USA maintains that Chaney Phillips's sentencing occurred at 9:00 a.m. and argues it would have been unlikely for Gregory and Ryan Phillips to have signed a donation instrument, thereby accepting their father's donation, before 9:00 a.m. The USA has not supported this argument with any deposition or affidavit testimony and, therefore, the court finds that there is an issue of material fact regarding when, on July 31, 1998, the inter vivos donation instrument was executed. As such, the USA is not entitled to judgment as a matter of law under § 3304(a)(1).

## II Fraudulent Transfer Under § 3304(b)(1)(A)

■ In order to prevail on a fraudulent transfer action under § 3304(b)(1)(A), the USA must only prove that the transfer was made "with actual intent to hinder, delay, or defraud a creditor." The FDCPA further provides that, in determining actual intent, "consideration may be given, among other factors, to whether—

(A) the transfer or obligation was to an insider;

(B) the debtor retained possession or control of the property transferred after the transfer;

(C) the transfer or obligation was disclosed or concealed;

(D) before the transfer was made or obligation incurred, the debtor had been sued or threatened with suit;

(E) the transfer was of substantially all the debtor's assets;

(F) the debtor absconded;

(G) the debtor removed or concealed assets;

(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."[23]

The USA argues that Chaney Phillips had actual intent to defraud a creditor because six of these eleven non-exclusive factors are present in this case.[24] The Phillipses,

---

21. *Id.,* Exhibit A. The corporation has held Chaney Phillips's 5% interest pending resolution of litigation.

22. La. Civ.Code art. 473.

23. 28 U.S.C. § 3304(b)(2).

24. *See* Mem. in Supp. of Mot. for Summary Judgment at p. 26–27 (discussing facts which

in their opposition memorandum, argue that summary judgment is generally inappropriate where questions of intent and state of mind are implicated.[25]

This court notes that several of the factors under § 3304(b)(2) do suggest that Chaney Phillips harbored fraudulent intent. For example, the transfer to his sons was clearly one to "insiders," which is defined by the FDCPA as including "relative[s] of the debtor," which, in turn, includes individuals related by blood within the third degree.[26] Second, the transfer was arguably "concealed" because, at the July 1998 sentencing hearing during which restitution was imposed, Chaney Phillips did not advise the court or the probation officer about a change in his financial situation.[27] Third, there was no consideration given for the asset transferred. Moreover, the transfer almost certainly occurred either "shortly before or shortly after" the sentencing court imposed a substantial restitution order on July 31, 1998.

Although consideration of these and other factors arguably do suggest "actual intent to hinder, delay, or defraud a creditor," Chaney Phillips denies that he had such intent.[28] Rather, Chaney Phillips testified in his deposition that he executed the donation to his sons because of uncertainty regarding his survival once incarcerated.[29] Accordingly, this court is not prepared to say, as a matter of law, that Chaney Phillips acted "with actual intent to hinder, delay, or defraud a creditor."

## III Fraudulent Transfer Under § 3304(b)(1)(B)

■ A fraudulent transfer may also be found where "the debtor makes the transfer... without receiving a reasonably equivalent value in exchange for the transfer" and the debtor "intended to incur, or believed, or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."[30] In this case, it is undisputed that the transfer of from Chaney Phillips to his sons Ryan and Gregory was made without consideration. Therefore, the only issue is whether Chaney Phillips intended to incur, believed he would incur, or reasonably should have believed he would incur debts beyond his ability to pay as they became due.

The USA does not suggest that Chaney Phillips intended to incur debt; rather, the USA argues that, because Mr. Phillips had read the pre-sentence report with his lawyer before sentencing, Mr. Phillips believed or reasonably should have believed he would incur debts beyond his ability to pay.[31] In response, the Phillipses argue that, in his deposition, Chaney Phillips testified that he was not aware of the specific penalties that might be imposed at sentencing.[32] Chaney Phillips further testi-

the USA argues satisfy (A), (C), (G), (H), (I), and (J) above).

**25.** Mem. in Opp. to Mot. for Summary Judgment at p. 5.

**26.** *See* 28 U.S.C. § 3301(5) and § 3301(7).

**27.** *See United States v. Moore*, 156 F.Supp.2d 238, 244 (D.Conn.2001) (discussing how the transfer from the defendant to his wife was arguably "concealed" when the defendant did not disclose the transfer at his sentencing hearing).

**28.** Chaney Phillips deposition at p. 155–156.

**29.** *Id.* at p. 109–111.

**30.** *Moore*, 156 F.Supp.2d at 245 (citing 28 U.S.C. § 3304(b)(1)(B)).

**31.** Mem. in Supp. of Mot. for Summary Judgment at p. 30.

**32.** Mem. in Opp. to Mot. for Summary Judgment at p. 5.

fied that, prior to sentencing, he believed that his co-defendant Mr. Newman would be the one ordered to pay restitution because Mr. Newman had been the one to benefit from the money associated with the restitution order.[33]

The USA has not submitted any summary judgment evidence supporting its position that Chaney Phillips affirmatively believed he would owe restitution as a result of his crimes. In fact, despite repeated attempts from the USA to elicit an admission from Chaney Phillips during his deposition, Chaney Phillips flatly denied knowing he would have to pay restitution.[34] Chaney Phillips's denials, along with his testimony that he read the pre-sentence report recommending that the judge impose restitution, create an issue of material fact regarding whether or not Mr. Phillips actually believed he would be required to pay restitution.

With regard to whether Chaney Phillips should have reasonably believed he would incur a debt in the form of restitution for his crimes, this court also finds issues of material fact precluding judgment as a matter of law at this time. The USA's argument on this issue can be found only in a footnote of its memorandum, in which the USA points out that section 100 of the pre-sentence report said that restitution would be due "immediately." [35] The USA has not submitted the pre-sentence report itself, nor any accompanying testimony that someone explained to Chaney Phillips what this part of the pre-sentence report meant. As such, this court cannot conclude, as a matter of law, that Chaney Phillips should have reasonably believed he would incur a debt at the time he transferred his 5% interest to his sons.

*Conclusion*

Accordingly, issues of material fact preclude this court from granting summary judgment on all three of the statutory provisions outlined by the USA. The USA's Motion for Summary Judgment (doc. 6) is hereby **DENIED**.

---

**33.** Mot. for Summary Judgment, Exhibit C, page 43.

**34.** Mot. for Summary Judgment, Exhibit C, pages 36–37; 42–43; 48–49.

**35.** Mem. in Supp. of Mot. for Summary Judgment at p. 30, fn. 136.