EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

TELESERVICES MARKETING CORPORATION and General Telemarketing International, Inc., Defendants.

No. 4:04 CV 75.

United States District Court, E.D. Texas, Sherman Division.

Dec. 14, 2005.

Keri Lyn Mallon, Dallas, TX, for Plaintiff.

Grace Ann Weatherly, Richard William Wood, Wood Thacker & Weatherly, Denton, TX, Jeffrey Jack Burley, Brewer Anthony Middlebrook Burley & Dunn, Sherman, TX, for Defendants.

## ORDER DENYING DEFENDANT TELESERVICES MARKETING CORPORATION'S MOTION FOR SUMMARY JUDGMENT

PAUL N. BROWN, Senior District Judge.

On this day came on for consideration Defendant Teleservices Marketing Corporation's ("TMC") Motion for Summary Judgment [Doc. No. 44]. Having considered the motion, Plaintiff Equal Employment Opportunity Commission's ("EEOC") opposition, TMC's reply and EEOC's surreply, the Court is of the opinion the motion should be Denied.

### Background

The EEOC brought this action under Title VII of the Civil Rights Act of 1964 on behalf of Charging Party, Babiker A. Babiker ("Babiker"). The EEOC alleges that TMC violated Title VII of the Civil Rights Act of 1964, as amended, by terminating Babiker because of his national origin, which is Sudanese.

TMC is in the business of providing telemarketing services. TMC initially hired Babiker in 2001 as an outbound customer service agent selling cellular phones and rate plans for Verizon. Babiker was laid off approximately one year later, along with all TMC employees working on the campaign, when Verizon discontinued the campaign. In July of 2002, TMC entered into a contract with a new customer, ATX Technologies ("ATX"). ATX provided global positioning systems ("GPS") for Mercedes–Benz automobiles. At the time ATX and TMC entered into the contract, Babiker was employed with another employer. TMC recruited Babiker, and as a result, Babiker left his employment to return to TMC.

The ATX campaign required twenty customer service agents, also referred to as telephone sales representatives or "TSRs." The TSRs were responsible for making calls to Mercedes–Benz owners, who had purchased their cars in the preceding year in an attempt to renew their GPS service, which was provided free during the first year of ownership. If the customer indicated to the TSR that he wanted to renew

the GPS service, the TSR was to obtain the customer's credit card information so that the renewal fee could be charged to the customer.

At some point after Babiker began working on the ATX campaign, TMC received a complaint from ATX about a call involving Babiker. The client complained that Babiker spoke broken English and was abrupt in asking a Mercedes–Benz owner for his credit card information. The president of TMC, Michael Cole, stated that Babiker was not the caliber of representative that ATX wanted working on their campaign.

A recording was made of the telephone call in question, which was reviewed by Babiker's supervisor Jah Harbour. Initially after listening to the call, Harbour found Babiker easy to understand. Harbour did however testify that he believed Babiker spoke broken English. Harbour testified that he knew that Babiker's accent played a role in the decision to remove Babiker from the ATX campaign and that ATX's issue with Babiker's accent is that he had one.

Babiker was removed from the ATX campaign. After his removal, Babiker was offered a position for less money somewhere else in the company. TMC contends it was a telemarketing position, but Babiker claims he was offered a manual labor position. After terminating Babiker, Cole wrote a letter of recommendation for Babiker complementing Babiker on his work performance and professionalism.

### Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir.1996) (citations omitted). Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Such nonmovant must also articulate the precise manner in which evidence he sets forth supports his claims. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994) (citation omitted). Moreover, in designating specific facts, the nonmovant must " 'go beyond the pleadings' " and use " 'his own affidavits, . . . deposition[s], answers to interrogatories, and admissions on file.' " *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (citation omitted).[1]

---

1. The Court also notes that Local Rule CV–56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence. . . ." Local Rule CV–56(c) further states that the Court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

### Discussion

As an initial matter, the Court addresses TMC's objection to the Declaration of Shana Gentle. To the extent that Gentle's declaration is not proper summary judgment evidence, the Court did not rely on it. However, Gentle's statement that other individuals employed on the ATX campaign had strong accents that would be considered American accents constitutes competent summary judgment evidence. Gentle supervised the individuals working on the ATX campaign and would have first-hand knowledge of their linguistic characteristics.

 Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of national origin. A plaintiff can prove intentional national origin discrimination through either direct or circumstantial evidence of discrimination. *Grimes v. Texas Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir.1996). To establish intentional discrimination by circumstantial evidence, an individual must first establish a *prima facie* case of intentional discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089,

1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In order to establish a *prima facie* case of intentional discrimination, the plaintiff must show 1) that the individual is a member of a protected class; 2) that he was qualified for the position; 3) that he was terminated from the position; and 4) that he was replaced by a person outside the protected group, or that he was discharged because of his national origin. *Winter v. Bank of Am., N.A.*, No. 3:02–CV–1591–L, 2003 WL 23200278, *3, 2003 U.S. Dist. LEXIS at *11 (N.D.Tex. Dec. 12, 2003) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425–26 (5th Cir.2000) (stating that the four-part test for establishing a *prima facie* case should not be applied too mechanically. The fact that an individual is replaced by one of a different national origin is neither sufficient nor necessary to raise an inference of discrimination)). The burden of establishing a *prime facie* case is not onerous. *Burdine*, 101 S.Ct. at 1094. "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985)).

 Once the plaintiff establishes a *prima facie* case, a presumption of discrimination arises. *Burdine*, 101 S.Ct. at 1094. The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 93 S.Ct. at 1824. The defendant's burden is one of production, not persuasion. Once the defendant provides a legitimate reason for its employment decision, the burden shifts back to the plaintiff to prove that the

reason given is merely a pretext for discrimination. *Hicks*, 113 S.Ct. at 2749; *McDonnell Douglas*, 93 S.Ct. at 1825. The plaintiff need not always introduce additional evidence of discrimination over and above his *prima facie* case. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109.

■ The EEOC contends that it has provided direct evidence of discrimination making summary judgment improper because Babiker was fired as a result of his accent, which is in essence national origin discrimination. TMC contends that no direct evidence of discrimination exists. The Code of Federal Regulations "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because ... an individual has the physical, cultural or linguistic characteristics of a national origin or group." 29 C.F.R. 1606.1. "[N]ational origin is deemed to be inextricably intertwined with an individual's accent." *Madiebo v. Div. of Medicaid/ State of Mississippi, et al.*, 2 F.Supp.2d 851, 855 (S.D.Miss.1997) (citing *Fragante v. City of Honolulu*, 888 F.2d 591, 596 (9th Cir.1989), *cert. denied* 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990)). As a result, discrimination against an individual based on the characteristics of his speech is a violation of Title VII of the Civil Rights Act of 1964, as amended. *Id.* Unlawful discrimination based on national origin does not occur if an individual's manner of speaking or accent affects his ability to effectively perform his job. *Id.* But "[b]ecause the evaluation of a person's communication skills is an inherently subjective determi-

nation, district courts are encouraged to give such claims a very searching look" so as to determine whether a claim that an individual lacked communication skills is not just an attempt to disguise national origin discrimination. *Id.* In this case the EEOC has presented sufficient evidence to create a question of fact as to whether it has established through direct evidence, that TMC unlawfully discriminated against Babiker. Certainly the fact that TMC had employed Babiker in an outbound calling campaign for Verizon and subsequently recruited him from another job to participate in the outbound calling campaign for ATX is at least some evidence that he was qualified for the position. Jah Harbour testified in his deposition that he and Cole made the decision to terminate Babiker and that Babiker's accent played a role in their decision to terminate Babiker. Jah Harbour further testified that he didn't recall whether he was actually the one who removed Babiker from the campaign. The testimony of Harbour in and of itself creates a fact issue as to whether EEOC can establish intentional discrimination through direct evidence. Accordingly, summary judgment is improper in this case.

■ A plaintiff may also prove unlawful discrimination through circumstantial evidence under the burden shifting framework set out in *McDonnell Douglas*. *Grimes*, 102 F.3d at 140. TMC contends that summary judgment should be granted because the EEOC lacks evidence on two factors necessary to establish a *prima facie* case of discrimination: 2) that Babiker was qualified for the position and 4) that Babiker was replaced by a person outside the protected group, or that he was discharged because of his national origin. As previously discussed, the Court is of the opinion that the EEOC has put forth sufficient evidence to create a question of fact

as to whether Babiker was qualified for the position. Additionally, the Court has previously determined that a question of fact remains as to whether Babiker was unlawfully discriminated against because of his national origin. Harbour testified the he and Cole made the decision to terminate Babiker. He also testified that ATX's issue with Babiker's accent is that he had one. The burden for establishing a *prima facie* case of discrimination is not onerous, and here the EEOC has clearly provided evidence sufficient to create questions of fact as to whether it has established a *prima facie* case of unlawful discrimination.

■ Once the EEOC has met its burden for establishing a *prima facie* case of discrimination, the burden of production shifts to TMC to provide a legitimate non-discriminatory reason for the termination. While TMC's motion does not make perfectly clear its legitimate and nondiscriminatory reason for terminating Babiker, the Court interprets TMC's motion as stating that it terminated Babiker because he was not qualified for the position in that he was unable to effectively communicate with customers. In providing this legitimate and nondiscriminatory reason for Babiker's termination, TMC has met its burden.

■ Because TMC has met its burden of production, the burden shifts back to the EEOC to prove that the reason provided is merely a pretext for discrimination. As previously stated, the EEOC need not always introduce additional evidence of discrimination over and above its *prima facie* case. *Reeves v. Sanderson Plumb-*

*ing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109. Issues of material fact remain in this case as to whether TMC's proffered reason for Babiker's termination is a merely a pretext for unlawful discrimination based on national origin.[2] Babiker was previously employed with TMC in a position in which he made outbound calls to Verizon customers. He and all the other employees on the Verizon campaign were laid off when that campaign ended. When TMC obtained a new client and needed to again hire individuals to make outbound calls to customers on behalf of a client, it actually recruited Babiker from other employment to come back to TMC as a TSR. At this point, TMC arguably regarded Babiker as qualified to make outbound calls. A Mercedes–Benz customer then complained about Babiker, and the complaint was relayed to Harbour. Upon his initial review of the call, Harbour sent an email that stated he found Babiker easy to understand. Ultimately, Babiker was terminated. Harbour testified that he and Cole made the decision to terminate Babiker based on the client's complaint. He also testified that ATX's issue with Babiker's accent was that he had one. Further, Shana Gentle stated in her declaration that other individuals working on the ATX campaign who were not terminated had strong accents, but their accents would be considered American accents. This evi-

2. In an apparent attempt to discredit the EEOC's summary judgment evidence, TMC attempts to question whether John Harbour and Jah Harbour are in fact the same person and the individual who was responsible for supervising Babiker. While Harbour clearly had some difficulty with his recollection dur-

ing his deposition testimony, the Court is satisfied that the correct individual was deposed in this case. Harbour's deposition was conducted in the offices of TMC's attorneys and TMC also attached portions of his deposition to its own motion for summary judgment.

dence is sufficient to create a question of fact as to whether TMC's proffered reason for terminating Babiker was pretextual. Accordingly, TMC's motion for summary judgment should be denied.

### Conclusion

For the foregoing reasons, Defendant Teleservices Marketing Corporation's Motion for Summary Judgment should be DENIED.

It is so ORDERED.