**Willie Bea GRIMES, Plaintiff–Appellant,**

**v.**

**TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; Richmond State School, Defendants–Appellees.**

No. 96–20274.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1996.

Patrick J. Gilpin, Houston, TX, for plaintiff-appellant.

Martin Joseph Thompson, Jr., Austin, TX, for defendants-appellees.

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this Title VII race discrimination and retaliation case, Plaintiff/Appellant Willie Bea Grimes brought suit in federal district court alleging that she had been discriminated against by her employers, Texas Department of Mental Health and Mental Retardation and Richmond State School ("Defendants"), when she failed to receive a promotion. The district court granted summary judgment in favor of defendants. For the following reasons, we affirm.

## BACKGROUND

Plaintiff Willie Bea Grimes ("Grimes") is an African–American female employee at the Brazos unit of Defendant Richmond State School, a center for mentally retarded people which is run by Defendant Texas Department of Mental Health and Mental Retardation (collectively "RSS"). Grimes had worked for RSS in various capacities since 1968. At the time of suit, Grimes was a Qualified Mental Retardation Professional ("QMRP"). As such, she counseled, supervised, and directed the training of patients.

In 1985, Grimes sued RSS for race discrimination when it awarded the position of Assistant Unit Director ("AUD") to Alan Garms ("Garms"), a white male. Grimes prevailed at trial on the issue of liability and the parties subsequently reached a settlement as to damages. This settlement included the retention of Plaintiff as a QMRP, along with an increase in her job responsibilities and pay.

In March 1993, RSS internally posted a job listing for the newly-created supervisory position of Lead QMRP. The Lead QMRP

would have, *inter alia*, the authority and responsibility to evaluate, promote, and terminate other QMRPs. Four candidates applied for this position including Grimes, who was the only African–American applicant.[1] Garms was charged with the responsibility of interviewing, ranking, and selecting the four candidates. To assist him in this process, Garms enlisted Mike Marshall, Coordinator of QMRP Services, and Dan Jones, Director of Education, to do the same. Garms instructed Jones to focus upon the applicants' respective program development experience and general programming knowledge, while Marshall was instructed to focus upon the applicants' respective supervision knowledge, program coordinator knowledge, QMRP knowledge, and knowledge of standards. It is unclear whether Garms also expressly told Jones and Marshall that communication skills were to be considered. Finally, it was required that the applicant possess a bachelor's degree.

To assist him in his evaluation of the applicants, Garms utilized a "score sheet." The score sheet contained a list of relevant qualifications (e.g., "Ability to supervise Unit QMRP"). For each qualification, Garms attributed a 1 to 10 ranking.

When all was said and done, Marshall selected Grimes as the best qualified applicant for the position of Lead QMRP, while Jones ranked Ranae Hackworth, Program Coordinator at RSS, as the most qualified. Garms—the one with final decision making authority—ranked Hackworth as his first choice and Grimes as his second choice. In May 1993, approximately two months after the initial job posting, Hackworth was offered the position of Lead QMRP.

At some disputed time, Garms subsequently discovered that Hackworth had not, in fact, earned a bachelor's degree. While Hackworth's personnel file contained a document purporting to be a University of Houston transcript (which arguably reflected that she had received such a degree), the transcript was revealed to be bogus. In August 1994, for reasons unclear, Hackworth resigned.

In February 1994, Grimes filed an action in federal district court pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging that she had been denied the position of Lead QMRP because of her race and in retaliation for her 1985 suit against RSS. The district court granted summary judgment in favor of RSS holding, *inter alia*, that (1) RSS met its burden of offering summary judgment evidence showing legitimate, nondiscriminatory reasons for not promoting Grimes, and (2) Grimes failed to meet her burden of offering summary judgment evidence showing that the reasons offered by RSS were merely a pretext for retaliation and race discrimination. Grimes filed a motion for reconsideration which was denied by the district court on February 15, 1996. On March 11, 1996, Grimes filed this appeal.

## DISCUSSION

The only issue before us is whether Appellant Grimes offered summary judgment evidence sufficient to create a genuine fact issue that Defendants' proffered legitimate, nondiscriminatory reasons for not promoting Grimes were pretextual.

### Summary Judgment

■■■ We review a district court's grant of summary judgment *de novo*. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444 (5th Cir. 1996); *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir.1993). Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In an employment discrimination case, we focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *LaPierre*, 86 F.3d at 447; *Armstrong*, 997 F.2d at 65–66. Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) ("[C]onclusory

---

1. The other candidates were Ranae Hackworth, John Thompson, and Kevin Schmidt.

allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994) (An employee's self-serving generalized testimony stating her subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor."); *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir.1993) ("Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (citations omitted). In response to motions for summary judgment, it is therefore incumbent upon the non-moving party to present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff on the basis of her race. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir.1994) (en banc).

*Title VII*

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). The evidentiary framework for Title VII claims was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A Title VII plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 801–03, 93 S.Ct. at 1824.

A plaintiff may prove a *prima facie* case of discrimination by showing (1) that she is a member of a protected class, (2) that she sought and was qualified for an available employment position, (3) that she was rejected for that position, and (4) that the employer continued to seek applicants with the plaintiff's qualifications. *Id.* A plaintiff establishes a *prima facie* case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment

action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *Long*, 88 F.3d at 304.

Once established, the plaintiff's *prima facie* case raises an inference of intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. at 1817. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 801–03, 93 S.Ct. at 1824. If the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference of discrimination raised by the plaintiff's *prima facie* case drops from the case. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–57, n. 10, 101 S.Ct. 1089, 1094–95, n. 10, 67 L.Ed.2d 207 (1981). The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

A plaintiff alleging employment discrimination is not required to come forward with direct evidence of discriminatory intent. *LaPierre*, 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc). Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence. A plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that a defendant's articulated non-discriminatory reason was pretextual. *McDonnell Douglas*, 411 U.S. at 803–05, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 251–53, 101 S.Ct. at 1093.

"In *Rhodes v. Guiberson Oil Tools,* we considered en banc whether a plaintiff necessarily presents a jury issue on the ultimate question of intentional discrimination by

proving the elements of a *prima facie* case and presenting a fact issue as to the truth of the defendant's proffered rationale." *La-Pierre*, 86 F.3d at 449. "We held that 'the answer lies in our traditional sufficiency-of-the-evidence analysis'." *Id.* at 449; *Rhodes*, 75 F.3d at 993. Our traditional sufficiency-of-the-evidence standard provides that there must be a conflict in substantial evidence to create a jury question. *LaPierre*, 86 F.3d at 449; *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir.1969) (en banc). In the employment discrimination context, evidence is substantial if it is such as to allow a rational factfinder to make a reasonable inference that race was a determinative reason for the employment decision. *Rhodes*, 75 F.3d at 994. Accordingly, we announced the following standard: a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains. *LaPierre*, 86 F.3d at 450; *Rhodes*, 75 F.3d at 994. The two-pronged standard we announced in *Rhodes* makes clear that a plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent in order to avoid summary judgment. *LaPierre*, 86 F.3d at 450.

*Evidence of Pretext*

■ To meet its burden of offering a legitimate, non-discriminatory reason for promoting Hackworth over Grimes, RSS offered as summary judgment evidence, *inter alia*, the affidavit of Garms. Garms states in his affidavit that he decided to promote Hackworth to the Lead QMRP position because she emerged as the superior candidate based upon her application, experience, and interview responses. Specifically, Garms states that Hackworth had more relevant supervisory and program development experience than Plaintiff, as well as a greater ability to supervise the Residential Coordinator and other unit QMRPs, to monitor the quality of programs, to organize and prioritize work, to communicate well verbally and in writing, to serve on committees, to use a computer, and to reinforce staff performance. Additionally, Garms states that Grimes' oral and written communication skills, when compared to those of Hackworth's, were "relatively unsatisfactory." Based upon Garms' affidavit, the district court concluded that RSS had met its summary judgment burden of offering a legitimate, non-discriminatory reason and, thus, looked to the summary judgment evidence of Grimes to see if such evidence could support a finding of pretext.

In support of her position opposing summary judgment, Grimes made several arguments. First, she argued that Garms and Marshall were biased against her because Garms received the AUD position which, in turn, gave rise to Grimes' successful discrimination suit in 1985. As for her assertion against Garms, the district court found that this claim was "conclusory and not supported by the summary judgment evidence." The district court added that Grimes' subjective belief that she was being discriminated against by Garms on the basis of her race was not enough. To contrary, the district court noted that "Plaintiff admits in her deposition that Garms was never impolite to her, that he never made derogatory comments about her race, and that she does not recall ever hearing from others that Garms had made derogatory comments about blacks."

As for her assertion against Marshall, Grimes offered the deposition testimony of ex-employee, Julius Castillo, Jr. ("Castillo"), in which Castillo states that in 1990 he was instructed by Marshall to watch Grimes and report any violations of RSS rules or procedures. Castillo stated that "he eventually felt as though the entire reason that he was promoted[2] ... was to have Plaintiff eventually terminated." Accepting these allegations as true for summary judgment purposes, the district court held that they were "too remote in time, all occurring some three years or more before the subject employ-

2. Castillo had recently been promoted to the supervisory position of Active Treatment Coordi- nator ("ATC").

ment decision was made." The district court ruled that there "is no summary judgment evidence of Marshall's having displayed any hostility or prejudice toward Plaintiff in the years immediately preceding or at the time of the Lead QMRP promotion decision. To the contrary, the summary judgment evidence reflects that Marshall was Plaintiff's strongest supporter in the evaluation of the candidates for promotion to Lead QMRP," and the undisputed evidence indicates that Marshall ranked Grimes first, or most qualified, for that position.

Next, Grimes argued that the evaluation scores were unfair, inaccurate, and biased against her. The district court ruled:

> As discussed above, the relevant inquiry is not whether Garms's evaluations were wise or correct, but whether they were honestly held and free of discriminatory bias.

> \*     \*     \*     \*     \*     \*

> A detailed review of the summary judgment evidence reveals that Garms has given legitimate, non-discriminatory reasons for the scores and scoring practices that Plaintiff challenges. Plaintiff's contention that the comparative scores assigned to Hackworth and Plaintiff have no basis in the record is simply wrong. Plaintiff must show with competent summary judgment evidence that Garms's ratings and the explanations for them are pretextual, and/or that the real basis for Garms's evaluation was race discrimination or unlawful retaliation; she has presented no such evidence.

Finally, Grimes argued that Garms must have been aware that Hackworth did not have a bachelor's degree and, therefore, Garms' willingness to hire Hackworth evinces a racially discriminatory intent. The district court disagreed and held that "Plaintiff has submitted no evidence ... that Garms, who was the hiring authority for the Lead QMRP position, knew at the time of his decision that ... Hackworth did not have a bachelor's degree." The district court noted:

> It seems ironic that the one party to this lawsuit who *did* know that Hackworth had no degree, but who did not tell, is Plaintiff herself. Plaintiff admits in her deposition that shortly after Hackworth was hired

into the Program Coordinator position, Plaintiff received a mysterious envelope at work containing a copy of Hackworth's transcript showing that no degree had been awarded. Knowing that a bachelor's degree was required for the Program Coordinator position, Plaintiff nonetheless kept the information and the copy of the transcript to herself. Even after Hackworth was promoted over Plaintiff to the Lead QMRP position, Plaintiff still did not make anyone aware of Hackworth's lack of a bachelor's degree, instead choosing to sit on the information for some nine months before making it the basis of her Complaint in this lawsuit.

The district court found that (1) it was not Garms' responsibility to investigate or verify academic credentials, (2) Garms had been informed by the personnel department that Hackworth did have a bachelor's degree, and (3) at no time did Garms suspect that Hackworth did not have such a degree. Accordingly, the district court held that "the subsequent discovery of Hackworth's fraud in no way evidences that Hackworth's promotion, in preference to Plaintiff, was an act of racial discrimination or retaliation or that the reasons given for the promotion decision were pretextual." For these reasons, the district court granted summary judgment in favor of RSS concluding that Grimes had failed to adduce summary judgment evidence of pretext sufficient to rebut RSS's evidence of a legitimate, non-discriminatory reason.

On appeal, Grimes argues that the district court erred because the summary judgment evidence sufficiently showed that RSS acted in retaliation and with racial animus. Specifically, Grimes relies upon her following assertions: Grimes had seven years of experience as a QMRP while Hackworth had none; Grimes had past supervisory experience while Hackworth had none; Grimes "monitored the quality of programs for several years, while Hackworth monitored programs for a lesser period of time"; the evaluation forms were skewed against Grimes; Hackworth "unjustifiably" received higher scores in several categories including "computer skills" and "ability to work on committees"; Grimes holds a master's degree in special education while Hackworth purportedly only

held a bachelor's degree; and, Marshall and Garms were biased against Grimes because she competed against Garms for the 1985 promotion. Grimes also argues that the district court erred in dismissing the probativeness of Castillo's statements. In short, Grimes argues that, by any subjective or objective standard, she was substantially more qualified than Hackworth.

Appellee RSS argues that Grimes has failed to provide any evidence of discrimination or retaliation. RSS argues that even if Grimes can prove a *prima facie* case, she has failed to rebut RSS's evidence of a legitimate, non-discriminatory reason with her own summary judgment evidence of pretext. RSS argues that any error in process was not intentional or racially motivated. Rather, any errors were the result of dishonesty by the candidates themselves, namely Hackworth's misrepresentations concerning her educational credentials and Grimes' complicity with Hackworth by not revealing her knowledge of Hackworth's lack of credentials (although she had harbored such information, by her admission, for at least one year). RSS asserts that it learned five months after the filing of the instant lawsuit, and years after the Lead QMRP position was filled, that Hackworth had falsified documents regarding her educational background. In sum, RSS argues that Grimes has no evidence to support her claims that Garms discriminated against her.

*Analysis*

Assuming, arguendo, that Grimes made a *prima facie* showing of Title VII discrimination based upon race and/or retaliation, RSS offered several reasons why Garms selected Hackworth instead of Grimes for the promotion to Lead QMRP (e.g., better communication skills, better supervisory skills, better program development experience, etc.). If believed, these reasons are legitimate and would support a finding that the decision not to promote Grimes was neither discriminatory nor retaliatory. Thus, we must determine whether Grimes has offered evidence showing that RSS retaliated against her, or intentionally discriminated against her on the basis of her race. Because Grimes does not offer any direct evidence of discrimination, she must establish circumstantial evidence of intentional discrimination by demonstrating that RSS's articulated nondiscriminatory reasons were pretextual. To do so, she must offer evidence such as to allow a rational factfinder to make a reasonable inference that race or retaliation was a determinative reason for the employment decision. Whether Grimes provided such summary judgment evidence is the question before us.

After thoroughly and carefully reviewing the entire record *de novo*, including the various affidavits, deposition transcripts, and correspondences, we conclude that Grimes has failed to offer summary judgment evidence which would allow a reasonable trier of fact to conclude that Garms' articulated reasons for failing to promote Grimes were merely a pretext for discrimination. Nowhere in the summary judgment record is there evidence which constitutes, or even suggests, a racial or retaliatory animus on the part of Garms or any other RSS employer. At best, Grimes' evidence, if believed, may allow an inference that Garms disliked Grimes. However, evidence of mere dislike is not enough to prove pretext under Title VII; Grimes must present evidence which would support an inference of racial or retaliatory animus in order to meet her evidentiary burden under a Title VII discrimination or retaliation claim. Grimes has not done so. Accordingly, the district court did not err in granting summary judgment in favor of Defendants.

## CONCLUSION

For aforementioned reasons, the order of the district court granting summary judgment in favor of Defendants is AFFIRMED.