**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-10668

WILLIAM HOPKINS,

Plaintiff-Appellant,

VERSUS

AMERICAN TELEPHONE and TELEGRAPH COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas
(3:95-CV-461-T)

January 6, 1998

Before EMILIO M. GARZA, PARKER, and DENNIS, Circuit Judges

PER CURIAM:[*]

William Hopkins ["Hopkins"] appeals adverse summary judgment rejecting his race discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against American Telephone and Telegraph ["AT&T"].

Hopkins contends the summary judgment record shows factual disputes on whether discriminatory or nondiscriminatory reasons

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

prompted his termination. Particularly, Hopkins testified in a deposition that he was placed on a program designed to monitor an employee's performance, a "work program," within one month of reporting discriminatory racial comments made by an account representative for AT&T. Hopkins alleges that Virgil Jochimsen, an account representative with the Network Systems division of AT&T, repeatedly warned Hopkins to cancel plans to attend product demonstrations scheduled for AT&T's southeastern territory. Hopkins Depo., p. 32-38. Jochisem told Hopkins that most of AT&T's customers in that area were Ku Klux Klan members and that Hopkins's presence would jeopardize sales and place Hopkins in physical danger. Id. at 32. Hopkins reported Jochisem's remarks to Hopkins's supervisor Paul Casson who took no action. Id. at 38-39. There is no evidence in the record that tends to corroborate or refute Hopkins's account of this incident. In effect, Hopkins argues that his report of the racial comments landed him on a work program and that being on a work program precipitated his termination.

AT&T avers that it placed Hopkins on a work program and, ultimately, terminated Hopkins for poor job performance. In support of its position, AT&T produced written complaints from account team managers describing Hopkins's performance as unsatisfactory. AT&T also produced substantial summary judgment evidence of Hopkins's unsatisfactory progress in the work program, including evidence of poor performance reports and of Hopkins's failure to complete assigned tasks. Hopkins counters that the

2

allegations of poor performance are untrue, but produced no summary judgment evidence, aside from his unsupported assertions, to bear out his contention.

Hopkins points to timing as circumstantial evidence of discrimination. But, even if timing alone is sufficient to survive summary judgment in some cases, the timing evidence in this case does not create a jury issue. See Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993). Here, Hopkins's placement on the work program followed more closely the receipt of complaint letters from account managers, than it did Hopkins's report of discriminatory comments. There is no direct evidence that the account managers were aware of, or influenced by, Jochisem's statements to Hopkins or Jochisem's concern that Hopkins's presence at particular product demonstrations could jeopardize sales to racially bigoted potential customers.

Having reviewed the summary judgment record in the light most favorable to Hopkins, we cannot conclude that it would be reasonable, as opposed to speculative, for a jury to infer that AT&T engaged in discriminatory practices. See Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 141 (5th Cir. 1996). The many reports of Hopkins's poor performance, countered only by Hopkins's unsupported assertions, are fatal to his claims of discrimination. Accordingly, the district court appropriately granted summary judgment in favor of AT&T.

For the foregoing reasons, we AFFIRM the judgment of the district court.