**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50809
Summary Calendar
_____


MARTIN CUEVAS and RICARDO SALAZAR,

Plaintiffs-Appellants,

VERSUS

HARRAH'S OPERATING COMPANY, INC.,
d.b.a. EMBASSY SUITES HOTEL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(SA-96-CV-1182)
_____

April 8, 1998

Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


I.

Plaintiffs Martin Cuevas and Ricardo Salazar allege that their former employer, Harrah's Operating Company, Inc. ("Harrah's"), owner of an Embassy Suites Hotel, violated title VII by discharging them on the basis of their race, sex, and national origin. Cuevas had been working as a waiter in the hotel's restaurant for about a

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

year on November 22, 1994, when he was terminated.  Salazar had been a restaurant manager for two years when he was terminated on October 1, 1994.  Two months before the terminations occurred, Terri Stout, a Caucasian female, had assumed the position of Food and Beverage Manager.

Cuevas presented affidavits to the effect that he was considered a "good waiter."  About a month before his termination, however, two waitresses reported to management that Cuevas had been "double-tipping."  In contravention of Embassy Suites's restaurant policy, Cuevas would add a gratuity to the checks of small parties and allow them to add an additional gratuity on top of the total.  He knew that the restaurant added gratuities only for parties of five or more.  When confronted about his behavior, Cuevas initially claimed that the computer was not working and then said he was entitled to the additional tips because he provided "good service."

Although Salazar was apparently a good manager in most respects, he exhibited a pattern of tardiness, for which he was reprimanded four times before his termination.  About a week before his termination, he received a "final warning" regarding his tardiness.  On or about September 22, 1994, Salazar altered the evaluation of a co-employee without Salazar's supervisor's knowledge or approval.  Salazar was ultimately fired for his continued failure to arrive at work and for falsifying company records.

II.

2

Plaintiffs brought this suit in the district court, establishing a *prima facie* case for discrimination under title VII: plaintiffs were members of a protected class; they were qualified for the positions held; they were subsequently discharged; and those positions were ultimately filled by persons not members of the protected class. In response, Embassy Suites presented evidence that Cuevas was fired for double-tipping and that Salazar was fired for tardiness and falsification of documents.

The defendants responded to the plaintiffs' claims by pointing to tardiness and dishonesty on Salazar's part, and overcharging customer's on Cuevas's part, to justify the terminations. Once a defendant comes forward with one or more non-discriminatory justifications for a termination, the plaintiff's initial *prima facie* case disappears, and the plaintiff is no longer entitled to a presumption that the termination was discriminatory. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-12 (1993). To overcome the defendant's response, the plaintiff must show both that each of the defendant's justifications was a pretext for impermissible discrimination and that race was a determinative factor. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 141 (5th Cir. 1996).

### III.

The district court held that plaintiffs failed to meet this burden because they offered no evidence of discrimination other than their own conclusions and because they failed to show that the justifications were pretextual. We agree.

3

Plaintiffs brought forth evidence that purported to show that Embassy Suites's justifications were pretextual. In Salazar's case, the evidence consisted of his supervisor's statement that Salazar was performing at an acceptable level and that Humphrey's had given Salazar permission to come in late "when Salazar was in court conducting 'court-interpreter' duties." A supervisor of Stout's made the decision to terminate Salazar, but plaintiffs emphasized that the decision was based upon a performance evaluation in which Humphrey initially rated Salazar as "acceptable"; Stout insisted on changing the evaluation to "unacceptable." Humphreys stated that although he thought Stout disliked Salazar, he did not think that she disliked Hispanics or men, and he did not believe that Salazar was terminated because of his race.

Cuevas presented Humphrey's statement that Cuevas was a good waiter, and he allegedly demonstrated that the tickets that formed the basis of the "double-tipping" evidence were hard to read and did not state the number of people in the party. Aside from that, his only evidence of pretext was the fact that Stout did not use customer complaints to verify the accusations and that the tickets were unclear. In no way did he impeach the credibility of the two waitresses who had reported his behavior to hotel management.

Plaintiffs' evidence proves nothing more than that Stout was a harsher taskmaster than was Humphreys. Contrary to their claims, plaintiffs have not offered evidence tending to establish that Stout lied; at most, they have offered evidence demonstrating that

4

she was hasty in passing judgment upon them.  It is highly unlikely that a finder of fact would conclude that Embassy Suites did not actually terminate them for the reasons offered.

Furthermore, to succeed on their discrimination claim, plaintiffs must do more than prove that Embassy Suites's justifications were false.  Now that the defendant has met its burden of producing nondiscriminatory reasons for its conduct, the plaintiffs must demonstrate both that the justifications were pretextual and that race was a determinative factor.  *St. Mary's*, 509 U.S. at 509; *Grimes*, 102 F.3d at 141.

Plaintiffs have offered no evidence affirmatively to demonstrate a discriminatory motive.  They present no evidence of derogatory racial comments or sexist attitudes, no consistent pattern of hiring or firing members of certain groups, and no other facts to suggest that Stout had a racist motive.  To be sure, the Supreme Court has stated that, in some cases, discrimination may be inferred from the pretextual nature of the defendant's justifications.  *St. Mary's*, 509 U.S. at 511.  The Court has also stated, however, that "the defendant need not persuade the court that it was actually motivated by the proffered reasons."  *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  A holding "that rejection of the defendant's proffered reasons compels judgment for the plaintiff disregards the fundamental principle of [FED. R. EVID.] 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears 'the ultimate burden of

5

persuasion.'" *St. Mary's*, 509 U.S. at 511.

Once the defendant offers any non-discriminatory reasons at all, the burden shifts to the plaintiffs to prove not only that the defendant did not terminate them for the reasons offered, but also that the defendant terminated them for some other, improper, reason. The pleadings in this case demonstrate that the plaintiffs would fail to convince a reasonable jury of this. Even if the jury were to find that Stout did not terminate the defendants for the reasons stated, its decision on that issue would be a close one; the record demonstrates that Stout had ample reason to believe the plaintiffs were not performing adequately, even if she was ultimately hasty or incorrect in her belief. No reasonable jury would use such borderline evidence to infer the requisite discriminatory intent. Accordingly, the plaintiffs have failed to present a genuine material issue of fact on the question of Stout's discriminatory intent.

Plaintiffs argue that the district court applied the wrong legal test by requiring plaintiffs to demonstrate that they were terminated solely for discriminatory reasons, rather than on the basis of a combination of discriminatory and other factors. On the contrary, the district court correctly applied our circuit's test, which requires that race be "a determinative factor" in the termination. *See Grimes*, 102 F.3d at 141. Nothing in the district court's opinion suggests otherwise. In any event, our *de novo* review leads us to the conclusion that the plaintiffs failed to create a reasonable inference of *any* discriminatory intent.

6

AFFIRMED.