**Jon SIGUR, Individually and as President on Behalf of Surplus Sales, Win Valco, Ltd. and Control Valve Services, Inc.**

v.

**EMERSON PROCESS MANAGEMENT and/or Fisher Rosemount, et al.**

**Civil Action No. 05–1323–A–M2.**

United States District Court, M.D. Louisiana.

June 8, 2007.

J. Michael Monsour, John B. Dunlap, III Couhig Partners, LLC, Baton Rouge, LA, for Jon Sigur.

James R. Silverstein, Francis H. Brown, III, Frilot, Partridge, Kohnke & Clements, LC, R. Patrick Vance, Edward H. Bergin, Jones, Walker, New Orleans, LA, for Emerson Process Management, et al.

### *RULING & ORDER*

NOLAND, United States Magistrate Judge.

This matter is before the Court on the Motion to Exclude Testimony of Expert, Philip A. Garrett, CPA (R. Doc. 50) filed by defendants, Emerson Process Management, LLP and Fisher Services Co. (collectively "defendants"). The Court previously issued a Ruling & Order dated April 25, 2007 (R. Doc. 76), wherein it deferred issuance of a final ruling relative to defendants' motion to exclude so as to allow plaintiff, Jon Sigur ("Sigur"), individually and as president on behalf of Surplus Sales, Win Valco, Ltd., and Control Valve Services, Inc., to submit evidence and argument supporting the causal assumptions underlying the opinions of his expert, Philip A. Garrett, CPA ("Garrett").

The factual and procedural background of this matter as well as the applicable legal standards were discussed in detail in the Court's April 25, 2007 Ruling.[1] As noted therein, defendants' primary argu-

---

1.  Briefly, Sigur filed this lawsuit against the defendants, alleging that he and his companies lost sales because the defendants, direct business competitors in the selling of re-manufactured valves and instruments, disseminated defamatory material to his clients. Through discovery in this matter, Sigur has identified five (5) clients which purportedly received the defamatory CD and emails: Windalco, Aluminum Partners in Jamaica, AT Specialties, Jamaica Aluminum Co., and Jamaica Public Service. *See*, Sigur's answer to Interrogatory No. 2 of defendants' third set of interrogatories, attached to defendants' supplemental memorandum as "Exhibit B."

However, at the time of both of his depositions in this matter, Sigur conceded that no one with any of those companies has told him that they would no longer do business with him, or that his sales would be adversely impacted, as a result of the defamatory material. *See*, Depositions of Sigur, attached to defendants' motion, Vol. I, p. 225, 228–229, 234–238; Vol. II, p. 144–148; Vol. III, p. 87–91, 156–157. In addition, although Sigur stated in his discovery responses that his sales have been "adversely affected by defendants' action," he did not present any sales figures or other evidence in support of that conclusion. *See also*, Sigur's answer to Interrogato-

ment in support of the present motion is that Garrett's testimony should be excluded because he did not rely upon sufficient facts and data in forming his opinions, in that he "erroneously assumed that Sigur's numerous customers received the defamatory material from the defendants and that this material resulted in his clients purchasing less valves from him." In opposition, Sigur argued that Garrett's opinions should not be excluded on that basis because Garrett was hired solely to analyze financial records and determine the losses Sigur incurred due to decreased sales, not to determine the causation of such losses. *See,* Garrett's Deposition, attached as Exhibit "B" to plaintiffs' opposition, pp. 29 and 31.

■ However, in its prior ruling, the Court determined that, while it is permissible for an expert to be retained solely for the purpose of opining on the issue of lost sales or damages, such an opinion is only relevant if it is based upon correct causal assumptions. In other words, Garrett's opinion concerning the quantity of Sigur's lost sales from January 1, 2005 to December 31, 2005 lacks the "relevance" to this

lawsuit, required by Fed.R.Evid. 702, if it is not based upon a correct assumption that such losses in sales were caused by the alleged conduct of the defendants, and the Court therefore deferred issuance of a final ruling on defendants' motion to exclude to allow Sigur the opportunity to submit some competent evidence demonstrating that the causal assumptions underlying Garrett's opinions are valid and that other factors which may have impacted Sigur's sales during the relevant time period, such as market conditions and the sales history of the customers at issue, were considered in determining causation.[2] In conclusion, the Court noted that, if Sigur is able to submit competent, summary judgment-type evidence indicating that there is, at the least, a genuine factual dispute concerning the underlying causal assumptions upon which Garrett relied in forming his opinions, Garrett's opinions as to damages will have relevance to this matter,[3] and the Court can then proceed to determine whether Garrett's methodology in calculating Sigur's damages satisfies the requirements of *Daubert.*

ry No. 3 of defendants' third set of interrogatories.

2. In particular, the Court noted that Sigur failed to present any evidence indicating that the impact of market factors, such as Hurricanes Katrina and Rita, the cyclical nature of "turnaround operations" in the industry, or the impact of competition, were considered in the underlying causal analysis. In addition, even if such market factors were not considered in determining causation, Sigur did not offer any explanation as to why, under generally accepted methodology, it was permissible for Garrett to assume that such factors did not affect Sigur's sales.

3. The Court explained that such approach is compatible with its gatekeeping role in addressing Rule 702 challenges. The Advisory Committee Notes discussing Rule 702(1) provide:

When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Advisory Committee Notes to Rule 702(1); *See also, Downeast Ventures Ltd. v. Washington County,* 2007 WL 679887, *2–3 (D.Me. 2007). In other words, once it has been established that a legitimate factual dispute exists and that there is a plausible evidentiary basis for an expert's opinion, it is not the role of the court to take sides with regard to the factual dispute. At that point, the court determines whether the methodology used by the expert meets the reliability requirements of *Daubert,* and if so, the disputed factual issues are left to be weighed by the jury. *Id.*

■ In response to the Court's Order, Sigur has now filed a supplemental memorandum in opposition to the motion to exclude (R. Doc. 98), to which defendants have filed a supplemental memorandum in response. (R. Doc. 102.) In his supplemental memorandum, Sigur "offer[s] and incorporate[s] ... each and every fact, allegation and argument contained in plaintiffs' *Supplemental and Amending Complaint* (R. Doc. 36), *Memorandum in Opposition to Emerson & Fisher's Motion for Summary Judgment* (R. Doc. 67) and *Memorandum in Opposition to John H. Carter Co., Inc.'s Motion for Summary Judgment* (filed on June 1, 2007), as if copied at this point *in extenso.*"[4] Sigur goes on to argue in a conclusory fashion that:

... Plaintiffs have shown that numerous individuals and companies who are/were clients of plaintiffs were shown some or all of the defamatory materials. At a minimum, plaintiffs have shown that there are genuine issues as to this material fact. As such, Mr. Garrett's opinions and testimony should not be excluded at the trial on the merits of this matter. Rather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means for defendants to attack Mr. Garrett's opinions and testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir.2002).

*See,* Sigur's supplemental memorandum, R. Doc. 98, p. 2. The only specific evidence which Sigur has submitted with his supplemental memorandum is his own affidavit and a brief excerpt from his deposition and that of Howard Nobles ("Nobles"), a "JHC employee."

In his affidavit, Sigur states that, although the defendants have suggested that other factors, such as recent hurricanes, market conditions, the sales history of plaintiffs' customers, and the cyclical nature of "turnaround operations" in the industry, may have adversely impacted plaintiffs' sales and that such factors should have been considered in Garrett's analysis, the number and dollar amounts of plaintiffs' sales are not dependent upon such factors. *See,* ¶ 3, Affidavit of Sigur, Exhibit "A" to Sigur's supplemental memorandum. Sigur further attests that Hurricanes Katrina and Rita "only shut Surplus Sales down for 'a couple of days,' and, regardless, plaintiffs have customers across the world"; therefore, the impact of Hurricanes Katrina and Rita on plaintiffs' sales was "minimal." *Id.*, ¶ 4. Finally, Sigur states that plaintiffs do not perform "turnaround operations" as suggested by the defendants, but instead, the amount of plaintiffs' re-manufactured valve sales is "consistent," being "driven almost solely by the significantly lower purchase price of a re-manufactured value (as compared to a brand new valve) and the fact that plaintiffs can deliver their valves much quicker than the[ir] original-manufacturer-competitors, such as the defendants." *Id.*, ¶ 5.

The excerpt from Sigur's deposition testimony simply confirms his statements in his affidavit that Surplus Sales was only closed for a few days following Hurricanes Katrina and Rita and that his businesses have customers across the world. *See,* Deposition of Sigur, pp. 125–128. Finally, the deposition testimony of Nobles confirms Sigur's statement in his affidavit that re-manufactured valves have a "significantly lower purchase price" than new valves

---

4. The Court notes that this reference by plaintiff is only to "fact[s], allegation[s] and argument[s];" Sigur does not refer to any specific evidence attached to those filings.

in that they can be sold for approximately half the price of brand new valves. *See,* Deposition of Nobles, p. 20.

While Sigur's evidence attempts to dispel other market factors as the cause of his alleged decline in sales between January 1, 2005 to December 31, 2005, Sigur again fails to present any competent evidence supporting the causal assumption upon which Garrett's opinion relies, *i.e.,* that the conduct of the defendants was the cause of Sigur's alleged decline in sales.[5] Instead, Sigur simply makes conclusory statements that "recent deposition testimony and written discovery" confirms that the "defamatory material which is the subject of this litigation was sent by defendants to various persons and companies in Jamaica, Michigan and possibly, elsewhere," without making any specific references to the deposition testimony and discovery responses to which he is referring. *See,* Sigur's supplemental memorandum, p. 4. Based upon those conclusory assertions, Sigur argues that he has "submitted summary judgment-type evidence indicating that there is, at the very least, a genuine factual dispute concerning the causal assumptions" underlying Garrett's opinions.

However, the Court is not required to sift through the record in this matter in search of evidence supporting Sigur's position. *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 383–84 (5th Cir.2000), quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)(en banc). As the Fifth Circuit Court of Appeal noted in *Badon,* the Court is to resolve factual controversies in favor of the nonmoving party, "but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." Id.,* at 393–394, quoting *Little,* at 1075.[6]

The only competent evidence before the Court on the issue of whether defendants' alleged conduct caused a decline in Sigur's business has been presented by the defendants, and such evidence indicates that the defamatory materials were not received from defendants and/or did not cause a decline in sales. *See,* Deposition testimony of Windalco employees, Patrick Nelson, p. 29, 66; and Fitz Henry, p. 25 (who testified that they received the defamatory CD from Trevor Hall, a third party and employee of H.L. Hall); *See also,* Surplus Sales' Sales Data (indicating that Windalco's sales with Sigur's companies increased

---

**5.** As noted in the Court's prior ruling on this motion, Sigur's sales to the only five companies which he has identified as receiving the defamatory material in question actually increased during the time period in question, and Garrett agreed that, if those five companies were the only clients considered, then Sigur did not sustain any damages as a result of the alleged conduct of the defendants. However, even considering the 130 + customers whose purchases from Sigur declined in 2005, Sigur has not presented any competent evidence demonstrating that it was defendants' alleged conduct which caused the decline in sales during that year, such as affidavits or deposition testimony by employees of those companies indicating that they purchased fewer re-manufactured valves from Sigur during 2005 because they received and/or

reviewed the defamatory materials from the defendants.

**6.** Sigur contends that, when the underlying facts are in dispute, experts can reach different conclusions based on competing versions of the facts, and the Court should not exclude Garrett's testimony simply because it believes one set of disputed facts over the other. However, the Court finds that, even after being given an additional opportunity to produce competent evidence, Sigur has still failed to demonstrate that disputed facts exist as to causation in this matter. Accordingly, Garrett's opinion concerning damages should be excluded as it would not be relevant or helpful to the jury.

from \$129,360.00 in 2004 to \$242,895.00 in 2005). Under the circumstances, the Court finds that Sigur has failed to carry his burden of establishing that, at the least, a genuine issue of material fact exists as to whether defendants' conduct caused a decline in his sales between January 1, 2005 to December 31, 2005.

Furthermore, the Court finds that it cannot infer that defendants' conduct was the cause of Sigur's alleged damages based upon the evidence Sigur has presented that other market factors did not cause the decline in his sales during 2005. First, the only evidence Sigur has presented concerning the impact of market factors on his sales in 2005 is his own statements contained in his affidavit, and self-serving and unsubstantiated statements by a plaintiff do not serve as competent summary judgment evidence. *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–140 (5th Cir.1996); *See also, Champagne Metals v. Ken–Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir.2006)(holding that an expert economist for the plaintiff failed to base his opinions on appropriate facts and that his testimony should be excluded, where his opinions were based solely on facts provided by the plaintiff, noting that "[n]o reasonable economist would simply accept the self-serving statement of an interested party as fact").

The Court also agrees with defendants that, in order to determine what impact Hurricanes Katrina and Rita had on Sigur's sales, one must look to more than just how long Sigur's businesses were closed and must also examine what impact the storms had on Sigur's customers, many of which are located in states directly impacted by those storms, Louisiana and Mississippi. *See,* Deposition of Sigur, p. 127 (where he indicated that the states in which he "primarily sells" his valves include Oklahoma, Louisiana, Texas, and Mississippi). Similarly, while Sigur indicates in his affidavit that his companies do not perform "turnaround operations," he has not presented any evidence as to how "turnaround operations" may have impacted the business of his customers, and hence their purchases from Sigur, during the time period in question. By contrast, defendants have referred to particular deposition excerpts from employees of Sigur's largest Jamaican customer, Windalco, who indicated that their business is cyclical and identified turnarounds, shut downs in operations, repair jobs, and additions to their plants as market factors which can result in increased or decreased purchases of valves. *See,* Depositions of Patrick Nelson, p. 24; Fitz Henry, p. 27; and Delroy Scott, p. 11–13.[7] In fact, Windalco's Instrument Team Leader, Delroy Scott, specifically testified that, because of the cyclical nature of Windalco's business, there may be some years where Windalco "buy[s] a lot of valves and other years where you don't buy a lot of valves." *Id.*[8]

---

**7.** Defendants also refer to the testimony of their expert, Charles Theriot, who indicated that the petrochemical industry, which is the industry to whom Sigur makes sales, "tends to be cyclical because it is in large part dependent upon the price of natural gas, which is a cyclical type of industry itself." Theriot also noted that a number of customers in the petrochemical industry are also in the turnaround business, meaning they provide labor in turnaround situations which tend to occur every three to four years. He explained that

such companies tend to defer turnarounds until there is a cyclical downturn in the industry. He therefore concluded that, based upon the cyclical nature of the petrochemical and turnaround industries and his understanding of Sigur's deposition, he would expect Sigur's business to also be cyclical. *See,* Deposition of Charles Theriot, pp. 28–29.

**8.** *See also,* Deposition testimony of Trevor Hall, an employee of one of Sigur's competitors in Jamaica, H.L. Hall, who also testified that the sales of valves and instruments are

Sigur has failed to present any competent evidence demonstrating that the alleged decline in his sales in 2005 did not result from the cyclical nature of his customers' businesses; furthermore, his expert, Garrett, has conceded that such factor was not considered in determining Sigur's damages.

■ Finally, Sigur has cited Jamaican law in his supplemental memorandum, which he contends is applicable to this case under Louisiana's conflicts of law rules, and argues that he can recover aggravated, exemplary and/or punitive damages under that law where the defendants' conduct has been calculated to make defendants a profit, even if his damages are insignificant or minimal. *Id.* However, he has offered absolutely no conflicts analysis in support of the application of Jamaican law whatsoever, and even assuming it is applicable, he is still required to demonstrate that it was defendants' conduct that caused his damages, even if they are minimal—a causal conclusion for which Sigur has offered no concrete evidence.

Accordingly;

**IT IS ORDERED** that the Motion to Exclude Testimony of Expert, Philip A. Garrett, CPA (R. Doc. 50) filed by defendants, Emerson Process Management, LLP, and Fisher Services Co., is hereby **GRANTED,** and the opinions and testimony of Philip A. Garrett, CPA shall be **EXCLUDED** from this matter.

cyclical and that there are certain operations which may take place in a plant that affect the purchases of valves and instruments, including maintenance turnarounds, plant shutdowns, projects, and operations activities. Deposition of Hall, pp. 40–42.