IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 26, 2007**

Charles R. Fulbruge III
Clerk

No. 07-40190
Summary Calendar

GEORGE ALCALA

Plaintiff - Appellant

v.

FRANCIS HARVEY, Secretary of the US Army (US Army Corps of
Engineers)

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas, Galveston
No. 3:05-CV-686

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant George Alcala appeals the district court's order
granting summary judgment for defendant-appellee Francis Harvey, Secretary
of the Army, on his claims of discrimination and retaliation in violation of Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17,
and the Federal Employee Anti-Discrimination and Retaliation Act of 2002, Pub.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

L. No. 107-174, 116 Stat. 566. For the following reasons, we AFFIRM, on alternative grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When the events that gave rise to this case began, George Alcala worked as a Wage Grade 13 General Engineer in the Program and Project Management Division of the Galveston Office of the United States Army Corps of Engineers ("USACE"). Alcala initially contacted an Equal Employment Opportunity ("EEO") counselor on March 22, 2004, and filed a formal complaint claiming discrimination on the bases of race, national origin,[1] and physical and mental disability on June 24, 2004. Subsequently, he withdrew the disability claim and added a claim for retaliation.

Alcala alleged the following conduct in support of his discrimination and retaliation claims: (1) in February 2002, Alcala was forced to manage an increasingly heavy workload due to the failure of his first-line supervisor, Arthur Janecka, and his second-line supervisor, Herbie Maurer, to implement his plan to create a USACE support branch, where he would serve as chief, to assist with Immigration and Customs Enforcement ("ICE") projects, a plan created upon USACE commander Colonel Leonard Waterworth's request and encouraged by Janecka; (2) in March 2002, Janecka and Maurer did not respond to Alcala's many emails asking that they address Col. Waterworth's request for a strategic plan or provide written guidance as to how he should move forward; (3) on July 8, 2002, Janecka and Maurer rejected suggestions that Alcala made during a briefing with Col. Waterworth, and Alcala learned that he had been criticized by senior managers as a "kingdom builder"; (4) on August 2, 2002, Janecka promoted Bruce Briggs, a white male, noncompetitively to a 120-day term, which later became permanent, as project manager and assigned Briggs border patrol

---

[1] Alcala failed to distinguish between race and national origin, identifying himself as Hispanic for both.

projects previously developed and managed by Alcala;[2] (5) between June and December 2003, Oliver Benton "Benny" Anderson, a design project engineer hired under Alcala to help on ICE projects, continuously undermined Alcala's authority by communicating directly with Kevin Jackson, an ICE contractor, and attacking Alcala's character, and Janecka failed to intervene; (6) between July 2003 and February 2004, USACE placed more reporting requirements on Alcala than he was able to handle, and Janecka and Maurer ignored Alcala's requests for assistance; (7) on February 17, 2004, Janecka assigned Anderson projects that Alcala formerly managed, and thereby diminished Alcala's credibility and reputation as senior project manager;[3] and (8) on June 24, 2004, Tom Clinton, a white male, was contracted by USACE to oversee repair and alteration ("R & A") projects that Alcala previously managed.

In response to Alcala's allegations, at the hearing and in its motion for summary judgment, USACE proffered the following as nondiscriminatory, non-retaliatory reasons for its actions. We set them out in some detail because, as it happens, they form the basis for our decision in this case.

First, to Alcala's allegation that his plan for a support branch was rejected, causing him to endure an unusually heavy workload, USACE explained that his plan was discussed in meetings, but ultimately was rejected by Col. Waterworth because USACE did not have the necessary funds available. Further, Alcala's proposed branch, unlike other support-for-others ("SFO") branches, required the creation of a new USACE branch and changes to the entire infrastructure of

---

[2] The EEOC dismissed this claim as time-barred because it was a discrete act that occurred outside the 45-day statute of limitations, but, nonetheless, it was considered as background evidence in support of Alcala's discrimination claim. 29 C.F.R. § 1614.105(a)(1).

[3] Alcala testified at the fact-finding conference that this allegation was the one supporting his retaliation claim, but in his briefs he seems also to rely on the June 24, 2004, reassignment of his repair and alteration projects to Clinton and his later transfer to a project in Mexico.

USACE. In an attempt to rebut, Alcala argued that this reason was pretextual because Maurer testified that there was no such thing as an SFO. This misreads Maurer's testimony, which reflects simply that he was not aware of SFOs of the sort proposed by Alcala. Alcala made no other attempt to rebut the structural or fiscal impediments to his plan.

Second, to Alcala's allegation that Janecka and Maurer ignored his emails asking for assistance in implementing his plan, both Janecka and Maurer testified that while they might not have responded by email, they personally met with Alcala and Col. Waterworth to discuss the initiative. Janecka also stated that he asked Alcala to look into getting funding approved by the Architect-Engineering Responsibility Coordinator ("AERC") which, to his knowledge, Alcala never did. Alcala did not dispute this, nor claim to have contacted AERC.

Third, to Alcala's repeated allegation that his suggestion to restructure USACE was rejected, and that he was criticized by his supervisors as a "kingdom builder," Janecka and Maurer repeated the impracticability of Alcala's plan and denied criticizing Alcala. Both Janecka and Maurer testified that Alcala was a dedicated government employee who did his job well. In fact, Anderson testified that he only heard the phrase "kingdom builder" from Alcala. Rafael Rubalcaba, another Grade 13 engineer who helped Alcala with his ICE projects, told Alcala that someone had criticized him, but could say neither who nor when. Alcala presented no evidence to rebut this testimony.

Fourth, Alcala's allegation that Briggs was contracted to assume Alcala's border patrol work was time-barred and could not sustain a judgment in his favor. Nonetheless, USACE pointed to Alcala's first allegation as evidence that Alcala felt overwhelmed by his workload and cited that as the reason for contracting Briggs. Alcala did not deny that he felt overwhelmed with work.

Fifth, to the claim that Anderson continuously undermined Alcala's authority by communicating directly with Jackson on an ICE project, Anderson

testified that Alcala refused to talk with Jackson. In order to facilitate the work, Anderson communicated with Jackson. Janecka permitted it to ensure the success of the project. Janecka added that, on two separate occasions, Jackson and another employee complained that they could not reach Alcala and had to communicate through Anderson. Alcala never disputed that he refused to communicate with Jackson.

Sixth, with respect to the increased burden on Alcala to make monthly financial reports and his supervisors' refusal to provide him with assistance, Janecka testified that it was ICE requiring more frequent reports, not USACE, and that he offered Alcala an assistant, but Alcala rejected the idea. Alcala did not dispute this testimony or present any evidence to suggest that it was untrue.

Seventh, with respect to Anderson receiving Alcala's ICE projects on February 17, 2004, Janecka testified that the second time Alcala complained about Anderson, on February 12, 2004, he gave Janecka an ultimatum to either fire Anderson or remove himself from the ICE projects. Janecka removed Alcala and assigned the projects to Anderson. Although Alcala looked uncomfortable with this decision, he did not openly object. Further, while Alcala's assignments were diminished following his removal, USACE attributed this to his requests for a lighter workload. Alcala did not deny that he had made such requests.

Eighth, and finally, in response to Alcala's complaint that Clinton was contracted on June 24, 2004, to assume his R & A projects after he was reassigned on February 17, 2004, Janecka testified, and Anderson corroborated, that in early February, Alcala, Briggs, and Anderson collectively asked him to hire another project manager responsible for the R & A projects. Janecka could not find anyone in USACE to take over the projects, so USACE contracted Clinton after months of searching. Alcala did not dispute this incident.

USACE dismissed Alcala's formal complaint on August 12, 2004 as time-barred and for failure to state a claim. On September 10, 2004, Alcala appealed

to the Equal Employment Opportunity Commission (the "EEOC"), Office of Federal Operations. On January 5, 2005, the EEOC reinstated Alcala's claims, but held that the fourth allegation was time-barred. On February 17, 2005, the Department of Defense accepted the remanded claims for investigation by the Office of Complaint Investigations. A fact-finding conference was held on June 3, 2005. Alcala withdrew his disability claim and added a retaliation claim, supported by his allegations that projects were removed from him and assigned to Anderson.[4]

On July 20, 2005, the EEO Complaints Investigator found that there was insufficient evidence in the record of severe or pervasive activities to prove a hostile work environment or show that Alcala was targeted for harassment. Moreover, with respect to the employment claims, USACE had articulated legitimate, nondiscriminatory reasons for all of its actions. Finally, Alcala failed to present sufficient evidence to show that USACE's reasons were pretextual.

Upon these findings, Alcala filed suit in district court on December 27, 2005. On December 15, 2006, USACE moved for summary judgment on the grounds that Alcala failed to make a prima facie case of either discrimination or retaliation, and that even if Alcala had made a prima facie case, USACE had legitimate, nondiscriminatory reasons for all of its actions. On January 18, 2007, Alcala responded, and again failed to provide any specific evidence that USACE's nondiscriminatory explanations were false or pretextual. Instead, his response stated generally that given "the substantive pattern and practice

---

[4] In the district court, to support his retaliation claim, Alcala also alleged that after Clinton was contracted, he was forced to apply for a temporary position in Mexico, in or about March 2005, because the projects that he was assigned were "a joke." Although this allegation was not raised in his EEO complaint, as the district court explained, it could be considered as evidence of retaliation because "it [grew] out of an earlier administrative charge properly before the court." Gupta v. E. Tex. State. Univ., 654 F.2d 411, 414 (5th Cir. 1981). However, Alcala testified under oath at the fact-finding conference that he very discreetly applied for the job, and that the position, Grade 14 Civil/Hydraulic Engineer, was actually a promotion from his Grade 13 position.

exhibited by USACE, [USACE's] explanations are not worthy of credence and thus—ironically—themselves establish pretext." (R. 388-89.)

The district court granted summary judgment on the grounds that Alcala could not show a causal connection between his allegations—that he was denied a promotion when his master plan was rejected and that he was "forced" to apply for and accept a position in Mexico, both adverse employment actions in the retaliation context under *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006)—and his protected activity, the March 22, 2004 contact with the EEO counselor. Thus, he failed to make a prima facie case of retaliation. *Id.*

Likewise, the district court applied the *Mattern* ultimate-employment-decision standard and held that Alcala failed to make a prima facie case of discrimination because he could not show that he was subject to an adverse employment action. *Mattern v. Eastman Kodak, Co.*, 104 F.3d 702, 707 (5th Cir. 1997). Alcala filed timely notice of appeal on February 20, 2007.

## II. STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo, applying the same legal standards that the district court applied to determine whether summary judgment was appropriate. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433-34 (5th Cir. 2005). Summary judgment is proper when the pleadings, discovery responses, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, we must view all evidence in the light most favorable to the non-moving party. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Nevertheless, we have made clear

that "unsubstantiated assertions are not competent summary judgment evidence . . . . In response to motions for summary judgment, it is . . . incumbent upon the non-moving party to present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff on the basis of . . . race" or national origin. Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996). Finally, it is well established that we "may affirm a grant of summary judgment on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for the result." Montgomery v. Brookshire, 34 F.3d 291, 297 (5th Cir. 1994).

### III. DISCUSSION

Once a plaintiff exhausts all available administrative remedies and files suit for discrimination and retaliation in federal district court, the burden-shifting approach established by the Supreme Court in McDonnell Douglas Corp. v. Green controls our analysis. 411 U.S. 792, 802 (1973); see also McCoy v. City of Shreveport, 492 F.3d 551, 2007 U.S. App. LEXIS 16582, at *6 (5th Cir. July 11, 2007). The plaintiff must first produce evidence sufficient to make a prima facie case of each claim. Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce legitimate, nondiscriminatory or non-retaliatory reasons for its action. Id. If the defendant proffers such reasons, the plaintiff then bears the ultimate burden of proving that the given reasons are merely pretext for discrimination or retaliation. Id. at 804-05.

In order to establish a prima facie case of retaliation a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the defendant employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. McCoy, 492 F.3d 551, 2007 U.S. App. LEXIS 16582, at *6-7. A prima facie case of discrimination requires a showing that the plaintiff: (1) is

a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. Id.

In this case, the district court granted summary judgment for USACE on the grounds that Alcala failed to make a prima facie case of retaliation or discrimination. Because we affirm the district court on an alternative basis, it is unnecessary to decide whether the district court was correct in concluding that Alcala failed to make a prima facie case of either discrimination or retaliation. Britt v. Grocers Supply Co., 978 F.2d 1441, 1450 (5th Cir. 1992). Regardless, USACE proffered legitimate, nondiscriminatory, non-retaliatory reasons for its actions, as presented in detail above, and Alcala failed to respond with sufficient evidence to show that those reasons were pretextual. He merely restated the undisputed facts that he was assigned to projects of diminished stature with reduced funding, he was transferred to Mexico with a lower locality pay allowance, and no other project managers had similar experiences. These recitations fail to provide the kind of "evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against [the] plaintiff on the basis of . . . race" or national origin necessary to show pretext and survive summary judgment. Grimes, 102 F.3d at 139-40.

## IV. CONCLUSION

Because Alcala did not put forth sufficient evidence to satisfy his burden of persuasion that USACE's reasons were merely pretextual, we AFFIRM the district court's judgment.

AFFIRMED.